**HODGES v. UNITED STATES.**

No. 365–52.

United States Court of Claims.

April 7, 1953.

John K. Pickens, Washington, D. C., Jerry N. Griffin, Washington, D. C., on the brief, for plaintiff.

Thomas O. Fleming, Washington, D. C., with whom was Holmes Baldridge, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

WHITAKER, Judge.

This case is before us on defendant's motion to dismiss plaintiff's petition. That motion disregards the naming of the United States Army as the defendant, instead of the United States, and is grounded on, first, the bar of the statute of limitations, and, second, the lack of authority to bind the United States of those alleged to have requisitioned plaintiff's property.

Plaintiff alleges in his petition that a lieutenant of the Panay guerrillas, one Abelardo Muyco, alleged to be the commanding officer of the guerrillas in the Passi Sector, negotiated with him for the surrender to him of his cattle ranch and such livestock, feed and materials thereon as the guerrillas might need, and that he did surrender his ranch, and that the guerrillas took charge of it. During their occupancy of the ranch, plaintiff alleges, some of his livestock was taken, for which receipts were given, others were taken by other guerrilla units without receipts, and still others were destroyed through negligence. Plaintiff claims compensation therefor in the amount of 262,179.90 pesos. He said that 4,700.00 pesos of this amount was allowed him by the Claims Service Philippine-Ryukyus Command, but he refused to accept it.

Plaintiff alleges that the foregoing goods were taken from September 1942 to March 1945, inclusive. Defendant says the claim is therefore barred by the statute of limitations, since the petition was not filed until July 16, 1952. Defendant says the statutory period expired three years after July 5, 1945, the date of the announcement of the Commanding General of the United States Army in the Philippines of the liberation of the Philippines from Japanese occupation, or six years from the time the cause of action accrued, whichever is later.

In Marcos v. United States, 106 F. Supp. 172, 122 Ct.Cl. 641, we held that the statute of limitations as to claimants in the Philippines was tolled until September 2, 1945, the date of the signing of the formal surrender of the Japanese forces, and that a claimant had six years thereafter within which to begin his suit. Both defendant and plaintiff—as well as the writer of this opinion—are dissatisfied with this holding, but we are disposed to adhere to it.

Plaintiff, however, says that his letter of April 30, 1951 to this court was the commencement of his suit on his claim, and, that letter having been filed within six years after September 2, 1945, his claim is not barred.

This letter was not the commencement of his suit. In it he says he had filed with the Adjutant General in Manila, Philippine Islands, an appeal on his claim, evidently from the action of the Claims Service, Philippine-Ryukyus Command, and that someone in the Claims Service informed him that his claim had been forwarded to the Court of Claims in Washington. With the letter to us he enclosed "a certified copy of the claim and appeal for your consideration." He closes his letter by saying, "I trust that you act favorably on my case * * *."

This court has no jurisdiction over appeals from the Claims Service, Philippine-Ryukyus Command. A claimant such as plaintiff can invoke the jurisdiction of this court only by filing an original petition herein. No original petition was filed until July 16, 1952.

We may grant, arguendo, that plaintiff's letter of April 30, 1951 might have been treated as the filing of a petition, but, in fact, it was not so treated. Instead, the clerk of the court declined to file it or to file the enclosed papers, and returned the papers to plaintiff. Having declined to file plaintiff's letter, the Attorney General was not notified that plaintiff was bringing suit on the claim and was not summoned to appear and answer. The Attorney General was not notified of plaintiff's claim, or of a suit on it, until after the filing of the petition on July 16, 1952.

The purpose of a statute of limitations, of course, is to notify the adverse party within the prescribed time of the intention to sue on a claim, accompanied by the actual initiation of the suit. This is to apprise him of the necessity of keeping his records intact and his witnesses available. Plaintiff in this case did not take the action

required to cause this court to give notice to the Attorney General, and, hence, the Attorney General was not apprised within the required time of the pendency of plaintiff's suit, nor was he later notified that one had been commenced within the required time.

■■■ The purpose of the statute, therefore, has not been served. Notice to the Court of Claims, of course, is not notice to the United States. The notice required is a notice to defend the suit. The Court of Claims does not defend suits, and, hence, notice to it does not suffice, unless the notice is such as to require it to notify the Attorney General. Since what the letter of April 30, 1951 enclosed was an appeal to the Adjutant General in Manila, and was not a petition to this court, and because it did not otherwise comply with our rules relative to petitions, the clerk was under no duty to file it and give notice of its filing to the Attorney General.

■■ The result is the Attorney General was not notified of plaintiff's claim and the institution of a suit on it until long after the statute had run. We are of opinion plaintiff's claim is barred by the statute of limitations.

But this case presents a problem much more far-reaching than the question of the statute of limitations, and that is the authority of an officer of the Army of the United States to bind the Government to pay for property requisitioned by him. This is the defendant's second defense.

The officer in this case was a subordinate officer, of the lowest rank, in a guerrilla band, not a regularly organized part of the Philippine Army, and not recognized as a part of that Army until after the property in question was requisitioned. There is no allegation that he had any authority to bind the United States to pay for the property requisitioned by him, or by him contracted for, and there is every indication that he did not have such authority. See Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10.

■■ Barring an exceptional case, the United States is not liable for property requisitioned by the military forces unless authority to requisition it had been given the requisitioning officer beforehand, or unless the act of requisition was later ratified. This statement hardly needs the citation of supporting authority, but such authority is found in the case of United States v. North American Transportation & Trading Co., 253 U.S. 330, 333–334, 40 S.Ct. 518, 64 L. Ed. 935.

In that case General Randall, United States Army, commanding the Department of Alaska, took for an army post a large tract of public land on which the North American Company had a valuable mining claim. Buildings were erected on the claim and the owner was dispossessed.

General Randall occupied the land on July 1, 1900 without previous authorization by the Secretary of War or the President. Subsequently on December 8, 1900 the President reserved the tract from sale and set it aside as a military reservation. On December 20, 1900 the Secretary of War announced it as a public reservation under the control of the War Department.

The United States contended that the right of action was barred by the six-year statute, but this court held the property was not taken by the United States on July 1, 1900, and not until December 8, 1900. The Supreme Court agreed. It said, 253 U.S. at pages 333–334, 40 S.Ct. at page 519:

"When the government, without instituting condemnation proceedings, appropriates for a public use under legislative authority private property to which it asserts no title, it impliedly promises to pay therefor. United States v. Great Falls Manufacturing Co., 112 U.S. 645, 5 S.Ct. 306, 28 L. Ed. 846; United States v. Lynah, 188 U.S. 445, 462, 465, 23 S.Ct. 349, 47 L. Ed. 539; United States v. Kelly, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746; United States v. Cress, 243 U.S. 316, 329, 37 S.Ct. 380, 61 L.Ed. 746. But, although Congress may have conferred upon the Executive Department power to take land for a given purpose, the government will not be deemed to have so appropriated private property,

merely because some officer thereafter takes possession of it with a view to effectuating the general purpose of Congress. See Ball Engineering Co. v. J. G. White & Co., 250 U.S. 46, 54–57, 39 S.Ct. 393, 63 L.Ed. 835. In order that the government shall be liable it must appear that the officer who has physically taken possession of the property was duly authorized so to do, either directly by Congress or by the official upon whom Congess conferred the power.

"The Acts of March 3, 1899, c. 423, 30 Stat. 1064, 1070, and of May 26, 1900, c. 586, 31 Stat. 205, 213, making appropriations for barracks and quarters for troops, furnish sufficient authorization from Congress to take land for such purposes, so that the difficulty encountered by the claimant in Hooe v. United States, 218 U.S. 322, 31 S. Ct. 85, 54 L.Ed. 1055, does not exist here. But the power granted by those acts was conferred upon the Secretary of War. Act Aug. 1, 1888, c. 728, § 1, 25 Stat. 357 * * * Act Aug. 18, 1890, c. 797, § 1, 26 Stat. 316 * * *. It was for him to determine whether the army post should be established and what land should be taken therefor. Compare Nahant v. United States, 1 Cir., 136 F. 273, 69 L.R.A. 723; 1 Cir., 153 F. 520; United States v. Certain Lands in Narragansett, R. I., 1 Cir., 145 F. 654. Power to take possession of the company's mining claim was not vested by law in Gen. Randall; and the Secretary of War had not, so far as appears, either authorized it or approved it before December 8, 1900. It was only, after the President reserved from sale and set aside for military purposes the large tract of land in which the company's mining claim was included that the Secretary of War took action which may be deemed an approval or ratification of what Gen. Randall had done. What he had done before that date having been without authority, and hence tortious, created no liability on the part of the government. Hijo v. United States, 194 U.S.

315, 323, 24 S.Ct. 727, 48 L.Ed. 994. Since the cause of action arose after December 7, 1900, this suit was not barred by section 156 of the Judicial Code."

The taking of this property by the Commanding General of the Department of Alaska created no liability on the United States, because it was taken without authority. Not until his action was ratified by the Secretary of War, who had been given the authority by Congress, was the United States bound. Can it be that the United States is bound in this case by reason of the requisition of the cattle by a lieutenant in a guerrilla band, only recognized as a part of the Philippine Army on a later date, there being no showing of any authority vested in him to do so?

■ The United States may become liable to pay for property requisitioned by an army in the field, but only when its taking is demanded by an emergency, by a danger which is immediate and impending and which will not admit of the delay necessary to secure action by civil authority.

In Mitchell v. Harmony, 13 How. 115, 14 L.Ed. 75, Colonel Mitchell was sued in trespass for the taking of Harmony's wagon trains and goods during the campaign to capture Chihuahua, Mexico. Colonel Mitchell defended on the ground that he had taken them through military necessity, and, hence, was not personally liable. Judgment was rendered against Colonel Mitchell and the Supreme Court affirmed it. We quote the following from the opinion, 13 How. at pages 134–135, which succintly sets out the extent of the authority of military forces in the field to take the property of a private citizen without incurring personal liability:

"There are, without doubt, occasions in which private property may lawfully be taken possession of or destroyed to prevent it from falling into the hands of the public enemy; and also where a military officer, charged with a particular duty, may impress private property into the public service or take it for public use. Unquestionably, in such cases, the government is

bound to make full compensation to the owner; but the officer is not a trespasser.

"But we are clearly of opinion, that in all of these cases the danger must be immediate and impending; or the necessity urgent for the public service, such as will not admit of delay, and where the action of the civil authority would be too late in providing the means which the occasion calls for. It is impossible to define the particular circumstances of danger or necessity in which this power may be lawfully exercised. Every case must depend on its own circumstances. It is the emergency that gives the right, and the emergency must be shown to exist before the taking can be justified.

"In deciding upon this necessity, however, the state of the facts, as they appeared to the officer at the time he acted, must govern the decision; for he must necessarily act upon the information of others as well as his own observation. And if, with such information as he had a right to rely upon, there is reasonable ground for believing that the peril is immediate and menacing, or the necessity urgent, he is justified in acting upon it; and the discovery afterwards that it was false or erroneous, will not make him a trespasser. But it is not sufficient to show that he exercised an honest judgment, and took the property to promote the public service; he must show by proof the nature and character of the emergency, such as he had reasonable grounds to believe it to be, and it is then for a jury to say, whether it was so pressing as not to admit of delay; and the occasion such, according to the information upon which he acted, that private rights must for the time give way to the common and public good."

To the same effect is United States v. Russell, 13 Wall. 623, 20 L.Ed. 474. See 13 Wall. at pages 627–629.

In Sterling v. Constantin, 287 U.S. 378, 53 S.Ct. 190, 77 L.Ed. 375, the court quoted with approval from Mitchell v. Harmony, supra. On page 401, of 287 U.S., on page 196 of 53 S.Ct., the court said:

"* * * Thus, in the theater of actual war, there are occasions in which private property may be taken or destroyed to prevent it from falling into the hands of the enemy or may be impressed into the public service, and the officer may show the necessity in defending an action for trespass. 'But we are clearly of opinion,' said the Court speaking through Chief Justice Taney, 'that in all of these cases the danger must be immediate and impending; or the necessity urgent for the public service, such as will not admit of delay, and where the action of the civil authority would be too late in providing the means which the occasion calls for. * * * Every case must depend on its own circumstances. It is the emergency that gives the right, and the emergency must be shown to exist before the taking can be justified.' Mitchell v. Harmony, 13 How. 115, 134, 14 L.Ed. 75. See, also, United States v. Russell, 13 Wall. 623, 628, 20 L.Ed. 474."

Plaintiff's petition makes no attempt to bring his case within the rule of Mitchell v. Harmony. No facts are alleged which would subject the United States to liability. Plaintiff's petition must be dismissed on this ground, as well as on the ground that it is barred by the statute of limitations.

But plaintiff says we held otherwise in Victorio v. United States, 106 F.Supp. 182, 122 Ct.Cl. 708, 722. In that case we said, 106 F.Supp. at page 190, 122 Ct.Cl. at page 722:

"From all of the above, it appears to us that pursuant to Executive Order 21 of President Osmena, supra, and the additional orders issued by USAFFE headquarters *recognized* guerrilla forces in the Philippines were considered to be on active duty in the Philippine Army, which Army had been called into the service of the Army of the United States pursuant to the Military Order of President Roosevelt

supra, and thus, that any requisitions made by Philippine guerrilla units in the service of the Army of the United States were for and on behalf of the United States and constitute an obligation of our Government. It further appears that the calling into the service of our forces of the Philippine units was in complete accord with the provisions of the 1918 Act and the 1934 Act. We know of no reason to question the validity of the order of our Army Headquarters, Sixth Army, recognizing the guerrilla unit in question retroactive to May 7, 1942, and accordingly any requisitions by that unit of plaintiff's property during the period of such recognition and service in our armed forces is the basis for a claim against the United States."

In that case we were concerned alone with the question of whether a recognized guerrilla unit of the Philippine Army would be considered a part of the armed forces of the United States, and, therefore, whether the United States could be liable for its acts. In our original opinion in that case we had held that, while it was a part of the Philippine Army, it was not a part of the Army of the United States. In our opinion on motion for a new trial, we held that it was a part of the Army of the United States.

That was the question before us. There was not before us the question of the circumstances under which the United States becomes liable for the taking of property by a unit of the United States Army. That is the question now before us. So, when we said in the Victorio case, supra, that "any requisitions by that unit of plaintiff's property during the period of such recognition and service in our armed forces is the basis for a claim against the United States", we must be understood to have meant that it is the basis of a claim under the same circumstances that would make the United States liable if the property had been requisitioned by a unit of the Regular Army of the United States.

We did not intend to say that the United States is liable for all requisitions by units of our armed forces. It is liable only when they are requisitioned under authority or under the circumstances outlined in Mitchell v. Harmony, supra. If requisitioned otherwise, the requisitioning officer may be personally liable, but the United States is not.

Defendant's motion to dismiss is granted, and plaintiff's petition is dismissed on both grounds stated in said motion.

It is so ordered.

JONES, Chief Judge, and HOWELL, MADDEN and LITTLETON, Judges, concur.