**WOODCRAFT CORPORATION**

v.

**UNITED STATES.**

No. 260-56.

United States Court of Claims.
June 3, 1959.

David A. Fegan, Washington, D. C., Leo J. Carrigan, Detroit, Mich., and Morris, Pearce, Gardner & Pratt, Washington, D. C., on the brief, for plaintiff.

Earl L. Huntington, Arlington, Va., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

BRYAN, District Judge, sitting by designation.

Ambiguities in the contract, it is alleged, caused additional costs in the manufacture of several thousand camp tables for the United States Army, and for these outlays the contractor now petitions us to award judgment against the United States. Having satisfied the contract price, the Government replies that the incurrence of the added expense was wholly voluntary and without promise or obligation, express or implied, of reimbursement. We agree with the defendant.

Condensed, the facts are these. A preproduction, finished specimen table was, pursuant to the contract, submitted to the Government's contracting officer and, in the respects relevant here, approved by him. After about 600 of the tables similar to the sample had been processed, they were exhibited to the Army Quartermaster's inspector. He found they failed in two particulars to meet the specifications. First, he said, "the four vertical edges of each leg" had not been "sanded smooth". Second, he noted in the language of the specifications again, that although "All surfaces of the

table" had been "given a coat of sealer" and "after drying, a coat of olive drab enamel" had been "applied to all surfaces", yet because the table tops were still not attractive, "the finished articles" were not "free from any defect which may affect appearance".

One imprecision in the specifications is that "vertical edges" could mean either the flat faces of the square, tapering legs of the table or the line of intersection of the planes of the faces. Plaintiff had assumed the latter; the inspector held the other view. The other uncertainty arose because the table tops were of cottonwood, and this wood, while acceptable under the contract, is soft as well as varying in its parts in absorbency, with the result that a sealer or paint will raise the fiber and grain of the wood. The effect is to mar the appearance without lessening the durability of the table.

Entirely amenable, the contractor dismantled the tables and reprocessed them, as well as the materials awaiting assembly, in conformity with the inspector's judgment. This pattern was followed for several weeks until this inspector was replaced by another. But the successor inspector decided, on inquiry from the plaintiff, that the original method of finishing the tables was proper. Whereupon the contractor reverted to that process and in that form completed the contract. The additional costs now sought are the expense occasioned by the adoption of the first inspector's interpretation.

For our decision, we may accept the plaintiff's assertion of ambiguity in both of the pertinent specifications. We may likewise grant that the new work was actually not within the contract and, also arguendo, that the first inspector's directions cause the excess investment now claimed by the plaintiff. But still the loss would be unrecoverable. The reason is that in these disbursements the plaintiff was a volunteer.

Quite explicitly the contract vested the contracting officer, subject only to appeal, with the power to resolve "any dispute concerning a question of fact arising under this contract". Further, at the inception of the agreement the contractor was advised in writing by the Government, inter alia, "The Inspector has no authority to advise or direct a contractor to use a particular method of production. * * * If a contractor * * * accepts advice from an inspector, the contractor assumes the sole responsibility for the results thereof."

As the plaintiff must admit, the additional costs were *ultra contractum*. Therefore, to win their recovery some extrinsic promise, implied or express, must be shown, such as an involuntary and compelled compliance, an allowed extra or a change in the contract. But an expenditure could not be involuntary and compelled without a previous protest to the contracting officer; J. A. Ross & Company v. United States, 1953, 115 F. Supp. 187, 126 Ct.Cl. 323, 329; and under the contract he alone could bind the defendant to an extra or a change. Thus, the plaintiff having acceded without objection to the inspector's demands, and now unable to plead either an ordered extra or an authorized change, the plaintiff's claim is without legal predicate.

We have thus far considered the questions presented by the plaintiff's claim as matters of law. But if they be factual, the administrative action has adequately and conclusively answered them. Rejected by the contracting officer, on review the Armed Services Board of Contract Appeals likewise adjudged the claim unfounded.

Denial and dismissal of the petition are ordered.

JONES, Chief Judge, and LARAMORE, MADDEN, and WHITAKER, Judges, concur.