WARCHOL CONSTRUCTION CO., INC.

v.

The UNITED STATES.

No. 27–81C.

United States Claims Court.

April 21, 1983.

Louis C. Warchol, Chicago, Ill., for plaintiff.

Eileen P. Fennessy, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

OPINION

LYDON, Judge:

This direct access government contract case is before the court on defendant's mo-

tion for summary judgment. Defendant seeks to dismiss plaintiff's complaint for damages, based on differing site conditions and improper assessment of liquidated damages on the ground that plaintiff failed to properly certify these claims to the contracting officer as required by the Contract Disputes Act, 41 U.S.C. Sec. 605(c)(1) (Supp. II, 1978). Plaintiff, in answer to defendant's motion, argues that the certification requirement, *supra,* does not apply under the circumstances of this case, and that, therefore, defendant's motion should be denied and the matter set down for trial on the merits of the claims presented in the complaint. For reasons which are set forth below, it is concluded that defendant's motion for summary judgment is granted and plaintiff's petition is to be dismissed without prejudice for want of subject matter jurisdiction.

I.

On March 9, 1979, plaintiff entered into a contract with the defendant, acting through the United States Postal Service (Postal Service), to build a new postal facility in Hinsdale, Illinois, for the fixed price of $1,479,000. During contract performance, the plaintiff encountered site conditions which it claimed differed from those listed on the survey and topographic map provided by the Postal Service. Plaintiff claimed that actual ground elevations present at the site differed from those which were shown on these contract documents.

Believing it encountered differing site conditions, plaintiff, on or about September 25, 1979, sought a change order for addi-

tional earthwork performed (removal of excess dirt), in the amount of $46,719, and a 30-day time extension. On October 25, 1979, plaintiff sought authorization from the Postal Service to haul off-site surplus dirt, which it claimed was unforeseen work, at a unit cost of $5.78 per cubic yard and requested a 30-day time extension. No total dollar amount of claim was stated in this letter. On November 7, 1979, plaintiff wrote the Postal Service explaining that the basis of its October 25, 1979 proposal was that the existing contour shown on the contract survey differed from the condition existing at the site.[1] On January 21, 1980, the contracting officer denied plaintiff's differing site condition claim by a final decision which advised plaintiff of its appeal rights.[2] Plaintiff was advised in the January 21, 1980 decision that its claim was denied because: " * * * Information available to us establishes that you did not promptly notify the Contracting Officer in writing, per Clause 7 of the General Provisions, prior to accomplishing extensive excavation and site development. Such action prejudiced the position of the United States Postal Service by preventing a true determination of undisturbed site elevations and prevented redesign of the site development."

On April 4, 1980, plaintiff submitted to the Postal Service a written proposal for a change order in the amount of $13,235.00 for additional costs incurred for asphalt paving due to the delay resulting from the differing site condition which was the subject of the January 21, 1980 decision of the

1. It would appear that the excavation work in issue was performed by a subcontractor, R.W. Paolasini (Paolasini). By letter dated November 15, 1979, Paolasini wrote plaintiff regarding the earthwork conditions, the extra work involved, the surplus soil matter and its right to additional compensation. In the penultimate paragraph of this letter Paolasini advised plaintiff as follows: "Again I wish to state that if your company and supervision notified the proper authorities in July, you and I would not have this problem facing us today."

2. The January 21, 1980 decision of the contracting officer is rather cryptic. It does not mention any claim by amount or with specifici-

ty, but instead refers to the matter broadly as plaintiff's "claim of 'Differing Site Condition'." As indicated above, the September 25 proposal ($46,719) and the October 25 proposal (no amount stated) were before the contracting officer and undoubtedly were subjects of the January 21, 1980 decision. The October 25 proposal was determined by plaintiff at a later time to have a value of $8,259.65. Thus, it is not unreasonable to conclude that as of the date of the January 21, 1980 decision, the differing site condition claim before the contracting officer most probably involved an amount in excess of $50,000.

contracting officer. Plaintiff also requested a 150-day time extension. In a supplementary letter dated April 23, 1980, plaintiff explained its April 4, 1980 letter in pertinent part as follows:

Your letter of October 11, 1979 directing us to proceed with site preparation and to submit proposal for extra work was responded by our proposal letter of October 25, 1979 and even before then a proposal was submitted by us last September 25, 1979 regarding the excess dirt. As of this writing, we have not received the proper change order for the proposals submitted.

In accordance with your instructions, we are re-scheduling the work involved and all extra costs and delays will be the responsibility of the United States Postal Service.

The delay caused by non issuance of the change order prohibits us from installing the asphalt paving as originally scheduled and resulted on [sic] additional expense. Please process the change order as per our letter of April 4, 1980.

By letter dated April 30, 1980, the contracting officer denied plaintiff's request for additional compensation for asphalt paving. This letter, however, did not indicate it was a final decision nor did it advise plaintiff of its appeal rights.

On January 19, 1981, plaintiff filed a petition in the United States Court of Claims seeking damages in the amount of $46,719.00 based on its encountering differing site conditions during contract performance. This claim was the subject of plaintiff's September 25, 1980 change order proposal, discussed, *supra*. The petition did not allege any damages resulting from delay. The government filed its answer on March 20, 1981 and by order dated March 23, 1981 the court instituted pretrial proceedings. On May 5, 1981 plaintiff requested that pretrial proceedings be suspended while it pursued additional claims before the contracting officer. Plaintiff's request was granted and proceedings were suspended.

On January 21, 1981, plaintiff sought from the contracting officer a change order in the amount of $8,259.62, along with a proper time extension, for hauling off-site, excavated material from plumbing trenches. Plaintiff's request referred to the previously mentioned October 25, 1979, proposal. In effect, the January 21, 1981 letter placed a dollar amount on the October 25, 1979 proposal.

Completion of the contract was late, and plaintiff was deemed liable for liquidated damages pursuant to the terms of the contract. The government retained as liquidated damages the amount of 10 percent of the total contract price of $1,479,000, or $147,900. Plaintiff had made various requests for time extensions and had urged that any delay encountered in performing the contract was not due to its fault or negligence and thus it was not changeable with liquidated damages and therefore it was entitled to payment of the retained $147,900.

On June 4, 1981, plaintiff met with the contracting officer to negotiate various unresolved contract issues. The results of the June 4, 1981 meeting were embodied in a letter from the contracting officer to the plaintiff dated August 14, 1981. The letter stated that as to the $46,719.79 issue, labeled "Remove Additional Spoil," it was not subject to decision at the June 4, 1981 meeting because said claim was presently pending in the United States Court of Claims. The letter further stated that both the "Paving Increase" request for $13,235.00 and the "Plumbing Excess Dirt" request for $8,259.62 were denied. Finally, the letter stated that the completion of the contract was 314 days late and that, at $550 per day, the liquidated damages were equal to $172,700.00. Consequently, the letter stated, the government refused to return any portion of the 10 percent being retained by the government as liquidated damages ($147,900.00) nor any amounts it had agreed to pay plaintiff in settlement of other issues totaling $18,383.06. The letter requested that plaintiff show specifically the reason for the delays and why the 314 days of liquidated damages should be reduced.

Shortly thereafter, on August 19, 1981, plaintiff wrote to the contracting officer seeking corrections of what it believed were errors in the August 14, 1981 letter. Plaintiff asserted that the $13,235 asphalt paving item and the $8,259.65 plumbing spoils item should be deferred, rather than denied or waived, because they were "directly related to the problem of the removal of additional Spoil, ($46,719.79)" *i.e.,* the differing site condition claim which was then pending in the U.S. Court of Claims. Plaintiff, thus, never requested nor received a formal contracting officer's final decision on the asphalt paving and plumbing spoils components (items) of its differing site condition claim and none has been formally issued as to such items.

With respect to the liquidated damages claim, plaintiff had submitted, by letter of June 15, 1981, a chronology of events relating to delays associated with the two roof top units required for the project. Plaintiff contended that because the suppliers had been on strike, the delays were excusable, thereby entitling plaintiff to a full reduction of liquidated damages. Plaintiff also stated that other delays from change order work, including those related to surplus dirt, would overlap the delays caused by the roof top units. In a letter from its attorney dated February 19, 1982, plaintiff supplemented its chronology by further detailing and explaining that the roof top unit delays were excusable and thus justified a time extension which would completely eliminate any liquidated damages.

Upon review of plaintiff's claim for excusable delay, the contracting officer determined that plaintiff was entitled to a time extension of 78 days. The contracting officer rendered a final decision on this issue in his letter dated April 1, 1982. As a result of the 78-day time extension granted by the contracting officer, the project was deemed to be only 191 days late. Based on the liquidated damages formula of $550.00 per day, this meant that the amount of liquidated damages for being 191 days late was $105,050.00 (191 × $550 = $105,050). However, pursuant to an internal procedural manual in effect at the time of plaintiff's contract, contracting officers were to assess and retain liquidated damages for a maximum of only 180 days. Thus, only $99,000 (180 × $550 = $99,000) was retained by the government as liquidated damages arising from the delays in completing the project.

On June 1, 1982 plaintiff filed an amended petition in the U.S. Court of Claims, amending the damages sought by the original petition filed on January 19, 1981 to include the $8,259.62 plumbing spoils item, the $13,325.00 asphalt paving item, and the $99,000 liquidated damages claim. The amended complaint set forth two counts.

In Count I of its amended complaint plaintiff alleged that the Postal Service furnished defective and inaccurate drawings, surveys, soil borings, and topographic maps to plaintiff, which plaintiff relied upon; that Postal Service officials were aware of the inaccurate site descriptions prior to the time plaintiff submitted its bid, but withheld this information from plaintiff; that plaintiff learned that the government-furnished plans and drawings did not accurately depict the conditions and elevations as they existed at the job site only after commencing excavation of the project site; that the Postal Service was orally notified by plaintiff once plaintiff became aware of the discrepancies in the soil conditions and site elevations, yet the contracting officer failed to promptly investigate the conditions at the site and unduly delayed the project, increased the cost and failed to issue an equitable monetary and time adjustment; and that as "a direct and proximate result of the above acts or omissions plaintiff suffered the following damages:

A. Was required to remove an additional 8,932 cubic yards of excavated unsuitable earth at an additional cost of $46,719.00.

B. Was required to remove an additional 1,429 cubic yards of plumbing spoils at an additional cost of $8,259.62.

C. Was required to delay the installation of the asphalt paving for one season at an additional cost of $13,325.00.

D. Was required to insure, supervise and maintain the project for the additional time for when the contracting officer received notice of the claim to the time he acted upon the same.

E. Was deprived of interest on the fund necessarily expended to perform the additional work from date of completion to present time.

In Count II of its amended complaint plaintiff seeks an award of $99,000 as a money judgment against the United States as a result of the liquidated damages withheld. Plaintiff characterized this claim as a direct appeal from the contracting officer's April 1, 1982 decision denying a request for an extension of time for completion of the project. Plaintiff alleged that the rate of liquidated damages is unreasonable and constitutes a penalty; that the Postal Service wrongfully delayed progress on the project by failing to act promptly and issue equitable adjustments; that the Postal Service failed to give adequate equitable time extensions for delays in completing the work arising from circumstances which were not the fault of the contractor; and that the Postal Service wrongfully assessed liquidated damages against plaintiff and withheld payment of the sum of $99,000 due on plaintiff's contract.

## II.

■ It is now well established that a contractor who seeks direct access to this court under the Contract Disputes Act, *supra,* must certify its claims of more than $50,000 to the contracting officer beforehand. *Arlington Alliance, Ltd. v. United States,* 231 Ct.Cl. ——, 685 F.2d 1353 (1982) and cases cited therein. Plaintiff concedes that it did not certify the claims it presents in its complaint. As to its claim under Count I of its amended complaint, plaintiff argues that while its total differing site condition claim exceeds $50,000, the components of this claim, which plaintiff contends are separate, distinct and independent claims, seek recovery of three individual amounts, each of which is less than $50,000. Since none of these three components ex-

ceeds $50,000, plaintiff argues the certification requirement is not for application. As to its claim under Count II, plaintiff contends that its claim is one for extensions of time and not for a specific amount of money and thus it is not a claim that requires certification. In its brief, plaintiff states: "The mere fact that a claim for an extension of time can be calculated and mathematically reduced to a dollar amount, does not make a request for an extension of time a submission for a claim for dollars."

### A.

In *Fidelity And Deposit Company of Maryland v. United States,* 2 Cl.Ct. 137 (Cl.Ct.1983) (GIBSON, J.) this court recently rejected a contractor's effort to bypass the certification requirement by fragmentizing a single claim, which was in excess of $50,000, into a series of separate claims, each of which was less than $50,000. In the *Fidelity* case, a contractor claimed that an erroneous survey supplied by the government caused it to dredge significantly larger quantities of materials than contemplated thereby delaying work performance and increasing the cost of performance. In seeking additional compensation from the contracting officer, the contractor separated its basic claim, damages arising out of the erroneous survey, into five subsections, labeled "Claim # 1, Claim # 2," etc., which represented a specific type of damage cost which the contractor believed resulted from the erroneous survey. The court in *Fidelity* held that the fragmented and individual description of categories of incurred costs as a result of the erroneous survey did not constitute separate claims, but rather served as supporting data justifying what was essentially a single claim for the total amount of the extra costs incurred as a result of the erroneous survey.

■ While there is a factual difference between the *Fidelity* case and the case at bar, the holding of the *Fidelity* case, that fragmentation of related claims will not serve to thwart application of the certification requirement as the jurisdictional pass-

port to this court in direct access situations, is equally appropriate in this case. In *Fidelity* the erroneous survey claim and subdivisions thereof were submitted in one document to the contracting officer at one time. In the instant case, related components of the differing site condition claim were presented to the contracting officer at different times. This is deemed to be an unimportant factual distinction. What is important is that both *Fidelity* and this case involved a single, unitary claim based on a common and related set of operative facts which gave rise to damage claims which the contractors sought to fragmentize into separate and distinct claims resulting, intentionally or otherwise, in certification avoidance.

The concept of what constitutes a "claim" has proved troublesome in various contents. *See Roscoe-Ajax Constr. Co. v. United States,* 204 Ct.Cl. 726, 499 F.2d 639 (1974). In the context of the certification requirement, where the components of a unitary claim, *e.g.,* differing site condition or erroneous survey, are so related to one another that they form parts of a whole, they ought to be considered together when determining whether certification is required. The issues relative to all three claims under Count I of the complaint are grounded in the same set of facts, or closely connected facts. The claims all rest on the contention that the elevations set forth in the contract documents differed from those actually encountered during contract performance. The decision on one claim most probably will directly affect the decisions on the other claims. The allegations in Count I of plaintiff's amended complaint and documentation before the court support these conclusions. It is this close relationship between the three claims set forth in Count I of the amended complaint that mandates that they be considered a unified claim for certification purposes.

Plaintiff seeks to make much of the fact that its change order proposal of September 25, 1979 to the contracting officer sought to recover only $46,719 and since this amount was under $50,000 it was not required to certify this claim. This is certainly true, and if this was the only claim flowing from the differing site condition alleged by plaintiff, there would be no certification problem. However, on October 25, 1979, plaintiff submitted another proposal (claim) to the contracting officer relative to hauling off-site surplus dirt which also flowed from the same differing site condition, *i.e.,* the site elevations differed from those shown on the contract survey. Plaintiff did not set forth the dollar amount of its claim in its October 25 proposal. Plaintiff, however, now claims $8,259.62 for this extra work. Thus, when the contracting officer rendered his final decision on January 21, 1980, on the differing site condition claim, there was before him the above two proposals, with a damage potential of over $50,000. Under such circumstances, certification of the differing site condition claim was required if the contracting officer's decision was to serve as a valid passport in a subsequent direct access suit. The fact that the contracting officer considered the uncertified claim on the merits and rejected it is of no moment. A contracting officer cannot waive the certification requirement. *Paul E. Lehman, Inc. v. United States,* 230 Ct.Cl. ——, ——, 673 F.2d 352, 354 (1982).

Plaintiff also stresses that it filed suit in this court on January 19, 1981, appealing the January 21, 1980 decision of the contracting officer, seeking to recover $46,719 as a result of encountering differing site conditions. Since the amount sought was less than $50,000, plaintiff contends it was not required to have the claim certified prior to filing suit and that the claim was properly before the court.[3]

---

3. As of January 19, 1981, plaintiff, based on the contention it encountered differing site conditions, had submitted a request for $46,719 to the contracting officer on September 25, 1979, and had made another request to the contracting officer for an additional $13,235 on April 4,

1980. Accordingly, as of the day its original complaint was filed, plaintiff's differing site condition claim was for at least $59,954. On January 21, 1981, two days after filing its complaint, plaintiff quantified its October 25, 1979 change order proposal by seeking an additional

Plaintiff relies on *Folk Constr. Co. v. United States,* 226 Ct.Cl. 602 (1981) and more particularly the language in said decision that reads: " * * * There is no requirement that a claim be certified after it has been properly submitted. * * * " *Id.* 226 Ct.Cl. at 605.

Plaintiff argues that, since the $46,719 claim in the original complaint was properly submitted to the contracting officer without certification, and was properly before the court, it cannot be required to certify at a later time the same claim. First, plaintiff's reliance on the *Folk* decision is misplaced and the language relied on by plaintiff taken out of context. The *Folk* case involved the "narrow question * * * [of] whether a contractor who has submitted a claim prior to the effective date of the Contract Disputes Act is required to certify that claim in order to appeal a decision of the contracting officer rendered after the effective date of the Act." *Folk Constr. Co. v. United States, supra,* 226 Ct.Cl. at 603–04. The court held that the Act's certification requirement does not apply to claims submitted to the contracting officer prior to the effective date of the Act and the language relied on by plaintiff must be read in that context. Here, plaintiff's $46,719 claim was submitted after the effective date of the Act. Therefore, the facts in this case do not fall within the pale of the narrow holding of the *Folk* case. As stated by the Court of Claims in *Paul E. Lehman, Inc. v. United States, supra,* the *Folk* case did not deal with "appeals from decisions of contracting officers upon uncertified claims submitted after the effective date of the

Act." 230 Ct.Cl. at ——, 673 F.2d at 356. Second, given the close relationship between the three claims set forth in the amended complaint, which all emanate from the same differing site condition, it is difficult to accept plaintiff's position that the assertion of only one of those three claims in the original complaint constituted a properly submitted claim for certification requirement purposes. *See* n. 3, *supra.*

Plaintiff's attempt to characterize the differing site condition claim contained in Count I of its amended complaint as three distinct claims is understandable given its admitted failure to certify. However, plaintiff's contention that the three damages figures set forth therein constitute three "separate, distinct and independent claims * * * " that were "included in Count I merely for purposes of convenience * * " is unconvincing, particularly in light of plaintiff's prior characterizations and representations concerning the damaged items in question. For example, in addition to its characterization of the damage items as part of a single claim in its amended complaint, discussed *supra,* plaintiff stated in a letter to the contracting officer dated August 19, 1981, the following:

> We request correction on listing for Items # 3 Paving increase ($13,235.00) and # 13 Plumbing Excess Dirt ($8,259.62). These items were differed [sic], not denied or waived, since they are directly related to the problem of the removal of Additional Spoil ($46,719.79). Please correct. [4]

---

$8,259.62 because of encountering differing site conditions. There is no explanation for this glaring delay. The conclusion to be drawn from these facts is that plaintiff's original complaint was incomplete and premature at the time it was filed and thus did not represent the full extent of what plaintiff was claiming as a result of encountering differing site conditions. Under such circumstances it would be unreasonable to view the original complaint as a proper one for purposes of determining whether there was compliance with the certification requirement. Instead, one must look at the amended complaint filed on June 1, 1982, which provided a full and complete factual setting on which to rule on the certification ques-

tion. In summary, it is concluded that for purposes of determining whether the certification requirement was met, the January 19, 1981 complaint serves no useful purpose. It is the amended complaint filed on June 1, 1982, in this case, which is meaningful and to which the certification question must be directed.

4. The import of this letter was to obtain a deferral on the decision regarding the $8,259.62 and $13,235.00 amounts because they were directly related to and part of the $46,719.79 claim, which at the time of this letter was already pending in the Court of Claims. Interestingly, plaintiff had requested, prior to this letter, that court proceedings concerning the

Clearly, plaintiff itself treated its claim for $8,259.62, for removal of excess plumbing dirt, and its claim for $13,325.00, for the additional costs of performing the asphalt paving work one season later, as additional costs or damages arising from the same operative facts as its $46,719.79 claim. Thus, even plaintiff recognized that these claims for additional amounts were not distinct, independent claims, but were requests for additional damages flowing from the same differing site condition claim. *See Fidelity And Deposit Company of Maryland, Inc. v. United States, supra,* 2 Cl.Ct. 137 at p. 143.

Because the amounts in question all arose from the same differing site condition claim and their aggregate value exceeded $50,000, plaintiff was obligated to certify the entire claim, notwithstanding the fact that plaintiff had received a final decision on the $46,719.79 request and had filed a suit in the U.S. Court of Claims seeking relief thereon. As indicated previously, said action was premature and presented an incomplete picture of the situation. When plaintiff's differing site condition claim grew to an amount in excess of $50,000, plaintiff was required to certify the entire claim. This obligation to certify existed, once it became apparent that the claim would most probably exceed $50,000, even if plaintiff may have been unaware of the extent of the additional damages at the time it submitted its initial differing site condition claim for the then known damages in the amount of $46,719.79.

The conclusion reached herein that these fragmented claims must be certified supports the underlying policies of the Act's certification requirement. The purpose of the statutory requirement that claims in excess of $50,000 be certified as to accuracy, completeness, and the contractor's good faith, is to prevent the submission of inflated and unsupportable claims to the contracting officer and thereby encourage the fair and equitable settlement of claims. *Paul E. Lehman, Inc. v. United States, supra,* 230 Ct.Cl. at ——, 673 F.2d at 354; *see also* S.Rep. No. 1118, 95th Cong., 2d Sess., *reprinted in* 1978 *U.S.Code Cong. & Ad. News,* 5235, 5241–42. The importance of this policy is demonstrated by the fact that the certification requirement is a jurisdictional prerequisite to a direct access challenge in this court of a contracting officer's decision.

In this case, plaintiff submitted its differing site claim in three separate installments, each seeking an amount less than $50,000, but with the aggregate amount exceeding $50,000. This piecemeal approach to submitting claims for damages, which arise out of the same operating circumstances effectively circumvents the aforementioned purposes and policies of the certification requirement. A contractor could deliberately submit various claims for amounts less than $50,000 in order to avoid certifying that the total amount sought is made in good faith, that the supporting data are accurate and complete, and that the total amount sought accurately reflects the contract adjustment for which the contractor believes the government is liable. On the contracting officer's side, such a fragmented and multiple claim approach to a basic unitary claim, *e.g.,* differing site condition or erroneous survey, most probably would serve to impede effective consideration of the larger implications of the basic unitary claim since it is presented in piecemeal fashion. Further, settlement also would most probably be discouraged since the full monetary impact of the basic unitary claim would not be known until the final fragmented claim was presented. It would be at that point that settlement could be realistically and appropriately dis-

---

complaint seeking $46,719.79 be suspended while it pursued these additional claims before the contracting officer. These facts support the conclusion, previously reached, that the original complaint was premature and incomplete. It must be remembered that the review process in this court, *i.e.,* direct access, does

not begin until the claim is certified. Accordingly, plaintiff had no need to file a complaint in this court until it certified all claims emanating from the differing site conditions. *See Skelly and Loy v. United States,* 231 Ct.Cl. ——, 685 F.2d 414 (1982).

cussed since it is at that time that all the cards are on the table. *See Newell Clothing Co.* ASBCA No. 24482, 80–2 BCA Para. 14,774 at 72,915. Even if a contractor innocently submits its requests for damages in fragments as they become apparent to it over time, it should not be relieved of its responsibility to certify the claim once it is apparent that the total amount exceeds $50,000.

In carefully examining the purposes and policies behind the Act's certification requirement, the court in *Fidelity And Deposit Company of Maryland v. United States, supra,* stressed that a contractor must not be allowed to escape or circumvent the Act's certification requirement by splintering what is in actuality a single, unitary claim into multiple claims. Such a fragmented submission of a single claim was found to violate the legislative purpose behind the certification requirement. The circumstances present in this case likewise violate that legislative purpose.

The holding of the *Fidelity* case, *supra,* and the like result reached in this case, serve to insure the integrity of the certification requirement by precluding the use of fragmented or multiple claims as a method to emasculate the certification requirement. These holdings should alert contractors to the perils of the fragmentation approach to claim presentation in direct access cases. It does not impose an unreasonable burden on a contractor to certify in accordance with the requirements imposed by 41 U.S.C. Sec. 605(c)(1) in situations where a single unitary claim, *e.g.,* differing site conditions, generates a number of directly related claims which manifest themselves over a period of time and which aggregate damages in excess of $50,000, but which individually amount to less than $50,000. In this case, plaintiff's basic claim was that it encountered differing site conditions during contract performance. It initially claimed that as a result of this differing site condition it incurred damages of $46,719. Without more, no certification was required. However, it later claimed additional damages were incurred because of this same differing site condition. At this point, the total amount claimed as a result of the same differing site condition exceeded $50,000 and the total amount claimed then should have been certified.

**B.**

In Count II of its amended complaint, plaintiff seeks a $99,000 money judgment for liquidated damages retained by defendant as a result of delays in completion of the contract which were attributed to plaintiff by the contracting officer. Plaintiff contends that the certification requirement does not apply to this claim.

■ Plaintiff first argues that it submitted various individual requests to the contracting officer for time extensions during the course of the contract and that these requests were not, in substance, claims for specific dollar amounts and, therefore, the certification requirement, which applies only to money claims, is inapplicable. Plaintiff next argues, that, in any event, if such requests are deemed monetary claims, each request represented a separate and independent claim and since each, according to plaintiff, involved less than $50,000, the certification requirement is not applicable. Plaintiff's arguments are misdirected and fail to focus on the claim presented to and decided by the contracting officer.

While the facts show that plaintiff did make various requests for time extensions during the course of the contract, the facts also show that the only request for time extensions from which a final decision was rendered by the contracting officer was made as a result of the meeting between the parties held on June 4, 1981. At this meeting, which " * * * was set up to cover all unresolved issues * * * " under the contract, the parties addressed the question concerning retention by the contracting officer of liquidated damages of $147,900 due to delays in the completion of the contract.

Communications between the parties subsequent to the June 4, 1981, meeting make it clear that the parties treated the request for time extensions as a single, unitary

claim. The contracting officer felt that liquidated damages of $147,900 for delays attributable to plaintiff was appropriate. Plaintiff believing it was not responsible for any delays, felt that assessment of liquidated damages in any amount was inappropriate. Before the contracting officer, plaintiff sought time extensions sufficient to cover a period of time that would preclude any assessment of liquidated damages against it. Accordingly, the dispute between the parties centered on responsibility for the delays in the completion of the contract.

On April 1, 1982, the contracting officer rendered a final decision on this dispute. The contracting officer awarded a time extension of 78 calendar days to plaintiff, which determination served to reduce the liquidated damage assessment against plaintiff from $147,900 to $99,000. The liquidated damage claim was treated by the parties as a single basic dispute. Before the contracting officer, plaintiff sought recovery of $147,900. The contracting officer only allowed recovery for $48,000. Plaintiff appealed from that decision in Count II of its complaint seeking to recover the $99,000 the contracting officer withheld from it as liquidated damages. Count II of its complaint constitutes a clear refutation of plaintiff's argument that its claim is not a monetary claim. It is concluded that the claim before the contracting officer and the claim asserted in Count II of the complaint represent a claim that must be certified for purposes of direct access to this count.

### C.

■ Because the claims in the complaint have been found to be uncertified, the review process attendant thereto has not yet begun. Accordingly, plaintiff is not precluded from resubmitting its claims, properly certified as required by statute, to the contracting officer for decision. If plaintiff receives an adverse decision from the contracting officer, it can thereafter exercise its option to appeal either to the appropriate Board of Contract Appeals or directly to this court. *See Skelly and Loy v. United States,* 231 Ct.Cl. ——, ——, 685 F.2d 414, 419 (1982).

Upon consideration of the submissions of the parties, without oral argument, it is concluded that plaintiff has failed to certify the claims presented in Counts I and II of its complaint as required by 41 U.S.C. Sec. 605(c)(1). Since the court lacks jurisdiction to entertain these claims, defendant's motion for summary judgment is granted, with the petition to be dismissed without prejudice.[5]

---

5. In its opposition to defendant's motion for summary judgment, plaintiff notes that summary judgment is appropriate only if there is no genuine issue as to any material fact. Plaintiff thereafter states: "Obviously there is a greatly contested issue of material fact of these separate and independent claims as noted herein." This cryptic statement stands alone. Plaintiff cites no factual issue in dispute relative to the certification issue. The above statement is construed to mean that there are genuine factual issues in dispute relative to the merits of the claims matters which are not before the court at this time. Since there are no factual issues in dispute as to the certification issue, summary judgment is appropriate in this case.