Richard L. THOEN

v.

The UNITED STATES.

No. 425–83C.

United States Claims Court.

Aug. 31, 1984.

Dale C. Nathan, Eagan, Minn., for plaintiff.

Stephen R. Bergenholtz, Washington, D.C., with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., for defendant; Lorraine B. Halloway, Washington, D.C., of counsel.

## OPINION

LYDON, Judge:

This contract case comes before the court on defendant's motion for partial dismissal of plaintiff's "Petition" (complaint) and plaintiff's opposition thereto.[1] The action is brought as a "direct access" case under section 10(a)(1) of the Contract Disputes Act of 1978, 41 U.S.C. § 609(a)(1) (1980). Defendant seeks dismissal of three "Items" of a four-item claim set forth in the complaint on the ground plaintiff failed to properly present these three claim items to the contracting officer for decision. Upon consideration of the complaint and the briefs of the parties, and without oral argument, the court concludes that plaintiff's complaint should be dismissed.

### I.

Plaintiff, an individual, is engaged in the business of providing consulting services. On July 18, 1978, plaintiff entered into a contract with the United States Department of the Army (DOA) to provide a working formula, with complete theoretical analysis, for predicting small journey bearing efficiency for the fixed contract price of $24,880. The contract performance period was 9 months, i.e., the completion date was April 30, 1979, and the contract price was to be paid at the completion of the contract upon the submission by plaintiff to the Contract Project Officer of one copy of a Final Technical Report for approval. During the period of contract performance, plaintiff was also required to submit monthly letter progress reports to the Contract Project Officer.

In a letter dated August 8, 1979, plaintiff, acknowledging that the contract was to be completed in 9 months and setting forth reasons for the delay in performance, requested "that the contract expiration date be extended to 31 December, 1979, with no increase or decrease in consideration." On January 2, 1980, a contract modification, agreed to by plaintiff, extended the period of contract performance to April 30, 1980, and provided that, "[t]he total contract amount of $24,880 remains unchanged as a result of this action." The contract performance period was subsequently extended until April 30, 1982, by contract modifications agreed to by plaintiff with no change in contract price as a result of said actions.

Plaintiff failed to submit on April 30, 1982, as required by the contract, a Final Technical Report on the project. On May 12, 1982, the contracting officer sent a "show cause" letter to plaintiff, advising that he had failed to perform the contract within the time required by the terms thereof and informing him that the government was considering termination of the

---

1. Since defendant appended certain exhibits to its motion, said motion is more properly one for summary judgment. More importantly for this case, these exhibits are not disputed.

contract for default. Plaintiff was requested to respond to said letter within 10 days, giving reasons or excuses for his failure to perform the contract within the required time specified in the contract, as modified.

On May 27, 1982, plaintiff responded to the May 12, 1982 "show cause" letter. Plaintiff advised that the study (project) turned out to be more complex than anyone anticipated, that he had overrun the budget before he even identified all the factors that embraced the study project, and that he "spent four times the amount of money in the budget." He further advised: "I could of course have terminated the contract at the beginning of the overrun, but I elected to continue, because the Army led me to believe that there would be a follow-on contract for the study of tooth friction * * *." After a technical discussion of bearing friction and other matters, plaintiff closed his May 27, 1982, letter, responding to the "show cause" letter, as follows: "In short, I feel that so long as the Army does not have the money to rectify or prevent design deficiencies, then it should not expect me to put aside other work, just to wrap up a contract that would pay me only a small fraction of what I spent."

On June 21, 1982, the contracting officer issued his final decision, notifying plaintiff that his contract with DOA was terminated for default for failure to complete the contract within the time required by its terms. The contracting officer also stated that plaintiff's failure in this regard had not been shown to have been caused by factors beyond plaintiff's control or without his fault or negligence. The decisional letter of the contracting officer advised plaintiff of his appeal rights.

On December 15, 1982, plaintiff wrote a detailed and rambling letter to the contracting officer which set forth a technical discussion relating to friction. Plaintiff, in this letter, also referenced his difficulties in performing the contract work and asserted that he was led to believe that there would be a follow-on contract for study of tooth (gear) friction and that this expectation was the only reason he continued to work

on the contract and continued to expend money since he otherwise could have terminated the contract at the beginning of the overrun.

In his complaint, filed in this court on June 27, 1983, plaintiff seeks recovery as follows:

*Item 1*—Judgment for $24,880, the original contract price;

*Item 2*—Judgment for the fair price of his services which plaintiff estimates to be at least $105,000. Plaintiff alleges that the additional effort he performed in this regard was requested by defendant's authorized representatives;

*Item 3*—Judgment for the value of his services realized by defendant in an amount estimated by plaintiff is to be at least $100,000; and

*Item 4*—Judgment for $15,000 for attorney's fees and costs.

Defendant did not file an answer to said complaint but instead filed the Motion For Partial Dismissal at bar.

## II.

The basis for defendant's motion for dismissal of claim Items (or Counts) 2, 3 and 4, *supra,* is the fact that plaintiff never presented said claims, properly certified, to the contracting officer for decision. Absent a contracting officer's final decision on a written and certified claim, there can be no direct access action brought in this court. *Milmark Services, Inc. v. United States,* 231 Ct.Cl. 954, 956 (order dated Sep. 3, 1982); *Paragon Energy Corp. v. United States,* 227 Ct.Cl. 176, 181, 645 F.2d 966, 969–970 (1981); *Conoc Constr. Corp. v. United States,* 3 Cl.Ct. 146, 147 (1983). Plaintiff's reliance on pre-Contract Disputes Act Board decisions is misplaced. *See e.g., River Associates, Inc.,* CGBCA No. T–166, 65–2 BCA ¶ 5,039. This Act now mandates a decision by the contracting officer for direct access jurisdiction to this court. Had plaintiff presented these claim Items to the contracting officer in certified form, as required by the Contract Disputes Act, consideration may have been given to

a fair and equitable settlement thereof, one of the purposes of the statutory certification requirement. *See Warchol Constr. Co. v. United States*, 2 Cl.Ct. 384, 391 (1983).[2] Further, the dollar information relative to said claim Items 2, 3 and 4 was readily available to plaintiff at the time of the default, or shortly thereafter at the latest. Plaintiff advised the contracting officer on May 27, 1982, that he "spent four times the amount of money in the budget," thus confirming that documentation and certification of claim Items 2, 3 and 4 could have, and should have, been presented to the contracting officer as claims before proceeding by "direct access" to this court. There was no new information on damages developed subsequent to the default which might serve to justify evasion of the certification requirement. *See Tecom, Inc. v. United States*, 732 F.2d 935, 937–38 (Fed. Cir.1984).

### III.

As to claim Item 1, there was a contracting officer's decision on the Government's default action. Defendant does not contest, and properly so, plaintiff's right to "direct access" consideration of claim Item 1 in this court. The court has jurisdiction to consider this claim.

It is to be noted that defendant does not move that claim Item 1 be dismissed. The court, however, believes that the allegations of the complaint together with the uncontested and undisputed exhibits attached to its motion for partial dismissal on claim Items 2, 3 and 4 show rather clearly

that plaintiff's charge that the DOA's termination of his contract was improper is not supported by applicable case law precedents. In considering whether claim Item 1 of plaintiff's complaint should be dismissed, the allegations of said complaint must be accepted as true, the complaint must be liberally construed, inferences to be drawn, if any, relative to said allegations in the complaint must favor the plaintiff, and, it must appear that plaintiff can prove no set of facts which would entitle them to relief on his claim. *See Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969). *See also South Louisiana Grain Services, Inc. v. United States*, 1 Cl.Ct. 281, 289–90 (1982), and cases cited therein.

■ The undisputed facts in this case show that the contract between the parties required that plaintiff submit a Final Technical Report before he was to be paid the contract price. It is not disputed that plaintiff refused, after receipt of a show cause order by the DOA, to submit a Final Technical Report as required by the contract. Without more, termination of the contract for default was proper.

Plaintiff does not dispute the above facts. Instead, he seeks to justify his failure to submit the Final Technical Report. Plaintiff claims that by means of contract required monthly reports he submitted all the data and information required by the contract and that any Final Technical Report would merely formally summarize all the information previously submitted. The answer to this assertion is simple. The

**2.** Plaintiff contends he has submitted these claim items to the contracting officer since he sent to the contracting officer under cover of a letter dated June 23, 1983, a copy of the complaint filed in this court to which was attached a certificate certifying that the claim was made in good faith, that the supporting data are current, accurate and complete (no supporting data was provided) and that the amount requested accurately reflects the amount plaintiff believes the government is liable. The court does not deem this to be a proper submission of a claim to the contracting officer. This letter and attachment could properly be viewed as informational copy not designed to elicit action by the contracting officer. Just as a letter to this court enclosing a

copy of a claim filed with an agency body does not constitute an original petition formalizing a claim in this court (*see Hodges v. United States*, 125 Ct.Cl. 405, 407–408, 111 F.Supp. 268, 270 (1953)), so too a letter to the contracting officer enclosing a copy of a complaint filed in this court does not constitute a formal claim for purposes of compliance with the Contract Disputes Act. *See also Disabled American Veterans v. United States*, 227 Ct.Cl. 474, 475–76, 650 F.2d 1178, 1179 (1981) (transmittal of pretrial submission in court action to Internal Revenue Service does not constitute notice to the Service for purposes of the refund statute, 26 U.S.C. § 7422(a) (1976)).

Government is entitled to get what it contracts for, which in this case was a Final Technical Report. Plaintiff was only asked to do what he had agreed to do under the contract, *i.e.*, to submit a Final Technical Report for approval. DOA was entitled to this under the contract. *See Rolin v. United States,* 142 Ct.Cl. 73, 81–82, 160 F.Supp. 264, 268 (1958); *see also WRB Corp. v. United States,* 183 Ct.Cl. 409, 510–12 (1968). Whether defendant made use of some of the data or information provided by the monthly progress reports is immaterial under the circumstances. Failure to submit the Final Technical Report within the time period called for in the contract, as amended, constituted a breach by plaintiff of said contract and serves to justify termination of said contract for default. *See James E. Kennedy, Trustee v. United States,* 164 Ct.Cl. 507 (1964); *Zoda v. United States,* 148 Ct.Cl. 49, 56, 180 F.Supp. 419, 423–24 (1960); *compare Devito v. United States,* 188 Ct.Cl. 979, 990–93, 413 F.2d 1147, 1153–55 (1969).

It is important to note that plaintiff does not allege in his complaint that his failure to submit the Final Technical Report was beyond his control and without his negligence. The undisputed fact is that he could have submitted said report but refused to do so since he felt he was entitled to receive more than the $24,880 contract price. In his May 27, 1982, letter to the "show cause" letter of May 12, 1982, attached as an exhibit to defendant's partial motion for dismissal, he advised the contracting officer he would not "put aside other work, just to wrap up a contract [*i.e.,* submit the Final Technical Report] that would pay me only a small fraction of what

I spent." It is thus clear, plaintiff deliberately refused to complete the contract and this breach justified the default termination of said contract.[3]

It is settled that under the Disputes clause of the contract, plaintiff was required to complete the contract regardless of disputes or disagreements that arose during performance. *See C.W. Schmid v. United States,* 173 Ct.Cl. 302, 309–10, 351 F.2d 651, 655 (1965). These disputes and disagreements were to be resolved later under the provisions of the contract. Plaintiff agreed to these provisions when he executed the contract. Plaintiff cannot justify abandoning performance of the contract because of any disagreement whether it be compensation or something else. *H & H Mfg. Co. v. United States,* 168 Ct.Cl. 873, 879–80 (1965). Plaintiff's failure to fulfill its contractual obligations as evidenced by the complaint and the exhibits attached to defendant's motion for partial dismissal show that the contract was properly terminated for plaintiff's default. *Id.* 168 Ct.Cl. at 881.

■ In his complaint plaintiff alleges that he did not prepare a Final Technical Report because "defendant's authorized representatives repeatedly solicited additional performance from plaintiff and urged plaintiff to provide additional performance with promises of additional compensation and follow-on contracts." (Complaint ¶ 9.) Plaintiff further alleged that "[a]s a result of the promises of defendant's authorized representatives, plaintiff performed substantial effort beyond that required by the contract and provides the results of that effort to the defendant."

3. Plaintiff complained in his letter of May 27, 1982, in response to the May 12, 1982, "show cause" letter, that the study project (the contract in issue) turned out to be more complex and expensive than anyone anticipated and that he was entitled to more compensation before he would complete the contract by submitting a Final Technical Report. However, plaintiff, as a consultant, contracted to perform the technical study in issue. As an expert, DOA, by contract, looked to him for answers, in a Final Technical Report which would presumably set forth the feasibility, difficulty, cost and other

related factors about which the study was concerned. It is established that "... when one agreed to do, for a fixed sum, a thing possible to be performed, he will not ... become entitled to additional compensation, because unforeseen difficulties are encountered." *United States v. Spearin,* 248 U.S. 132, 136, 39 S.Ct. 59, 61, 63 L.Ed. 166 (1918). The Government is under no legal obligation to relieve a contractor of an unexpected financial burden in performance of a fixed price contract. *Rolin v. United States,* 142 Ct.Cl. 73, 81, 160 F.Supp. 264, 268–69 (1958).

(Complaint ¶ 10.) Plaintiff's May 27, 1982, response to the "show cause" letter indicates that during performance plaintiff discovered that funding for continued work on bearing friction and design deficiency remedies would not be forthcoming and thus no follow-on contracts would be let. It was with this knowledge that plaintiff advised the contracting officer that he did not intend "to put aside other work, just to wrap up a contract that would pay me only a small fraction of what I spent." It is to be noted that plaintiff does not allege, either in his complaint or in his letters to DOA, that the contracting officer solicited, directed or ordered additional performance.

Whatever the defendant's authorized representatives told plaintiff relative to contract performance or follow-on contracts is immaterial under the circumstances. The contract specifically provided in pertinent part, under a clause entitled, "Contracting Officer's Technical Representative/Contracting Officer's Representative", as follows:

> The Contracting Officer's Technical Representative/Contracting Officer's Representative will not be authorized to change any of the terms and conditions of the contract. Changes, including changes in the scope of the work, will be made only by the Contracting Officer by properly executed modifications to the contract. (Complaint ¶ 6.)

Thus, plaintiff's reliance on what the authorized representatives told him relative to additional compensation and follow-on contracts was at his peril and provides, as a matter of law, no basis, under the circumstances, for government liability as a result thereof.

Case law, under these circumstances, clearly demonstrates that plaintiff's complaint provides no basis for relief. In *Woodcraft Corporation v. United States*, 146 Ct.Cl. 101, 103, 173 F.Supp. 613, 614 (1959), the Court of Claims held that, as a matter of law, a contractor was not entitled to recover on a claim for additional compensation occasioned by additional work performed at the directions of a government inspector because the inspector had no authority to issue such directions. In *Woodcraft*, as in this case, the contractor was advised in writing that advice or directions from contracting officer's representatives relative to any change in the terms and conditions of the contract would be at the peril of the contractor. In this case, as in *Woodcraft*, only the contracting officer, under the terms of the contract, "could bind defendant [the Government] to an extra or a change. Thus, the plaintiff having acceded without objection to the inspector's demands [here the contracting officer's representatives solicitations to provide additional performance], and now unable to plead either an ordered extra or an authorized change, the plaintiff's claim is without legal predicate." *Id.* 146 Ct.Cl. at 103, 173 F.Supp. at 614.

A similar result was reached in *Chalker and Lund Co. v. United States*, 123 Ct.Cl. 381, 407–08, 107 F.Supp. 734 (1952), where a contractor's claim, based on the terms of an understanding between plaintiff and the Government's area engineer who was the authorized representative of the contracting officer was rejected because it was based on an unauthorized verbal agreement with the government's authorized representative. In the *Chalker and Lund* case, as in the case at bar, the area engineer was "the authorized representative for certain limited purposes under the contract, and there is no indication either in the contract or elsewhere of the authority of the area engineer, without approval of the contracting officer to so amend the contract itself by an agreement of this sort." *Id.* 123 Ct.Cl. at 408, 107 F.Supp. 734. A strikingly similar situation is present in this case. Under the language of the contract (Complaint ¶ 6), quoted, *supra*, plaintiff was bound to take notice of the limits of the authority of the contracting officer's representatives, and the Government, as a result, is not bound by the unauthorized acts, solicitations, directions or urgings of these representatives. *See id.* 123 Ct.Cl. at 408, 107 F.Supp. 734.

Finally, in a recent Supreme Court decision, *Heckler v. Community Health Services, et al.,* —— U.S. ——, 104 S.Ct. 2218, 2225–27, 81 L.Ed.2d 42 (1984), the court had occasion to once again reaffirm the well established proposition that "those who deal with the Government are expected to know the law and may not rely on the conduct of government agents contrary to law", citing *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947). This is so even if the advice from the Government's representative is erroneous and the parties had not anticipated the problems encountered. Further, the fact that the contractor was informed of the limitations on the authority of the government representative by contract provision, and the fact that the solicitations and promises of the contracting officer's representatives were oral, all served to undermine the propriety of plaintiff's reliance thereon. *See Heckler v. Community Health Services, et al., supra,* 104 S.Ct. at 2226–27.

On the allegations of the complaint, accepted as true for purposes of this decision, case law precedents cited, *supra,* and the pertinent contract provision cited, *supra,* (Complaint ¶ 6), establish clearly that plaintiff's claim based on the unauthorized solicitations and promises of authorized contracting officer representatives must be denied as a matter of law. It is the court's judgment that plaintiff would be unable at trial to prove any set of facts which would entitle him to relief on claim Item 1. *See Jenkins v. McKeithen, supra,* 395 U.S. at 422, 89 S.Ct. at 1849.

## IV.

For reasons set forth above, it is determined that plaintiff's complaint ("Petition") is to be dismissed.