Z.A.N. COMPANY, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 432–81C.

United States Claims Court.

Sept. 5, 1984.

Sam Zalman Gdanski, Spring Valley, N.Y., for plaintiff.

Thomas W. Petersen, Washington, D.C., with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., for defendant; Leodis Matthews and Michael J. Denton, Dept. of Justice, and Frank R. Ortisi, Dept. of the Army, of counsel.

## OPINION

YANNELLO, Judge.

This case comes before the court on defendant's motion for partial summary judgment. Defendant contends that the portions of the complaint which seek to contest the defendant's default termination of the contract and assessment of excess reprocurement costs and which seek to assert a claim for a termination for the convenience of the government are untimely and must be dismissed.[1] In response, plaintiff interposes, *inter alia*, the *Fulford* doctrine. For the reasons stated herein, the defendant's motion is granted in part and denied in part. Certain portions of the plaintiff's petition are to be dismissed.

### Statement of Facts

The contract here in issue (DAAE07–78–C–0748) was awarded by the U.S. Army Tank Automotive Material Readiness Command on June 1, 1978 and it called for delivery of ring oil seals no later than June 3, 1979.

The contract contained a standard Default clause identical to that found at 32 DAR C.F.R. § 7–103.11 (1980). In general terms, this clause provides that the government may terminate the contract for default when the contractor fails to meet delivery schedules or otherwise perform in conformance with the contract. When the government terminates for default, it may reprocure, and the contractor will be liable for any excess reprocurement costs unless the default was, in short, excusable (that is, beyond the control of, and without the fault or negligence of, the contractor). Upon default termination, the government may take possession of completed items, work-in-progress, or on-site equipment and may compute the payment due therefor; if the parties disagree as to amount, the dispute shall be subject to resolution under the Disputes clause. Finally, the Default clause provides that, if it is later deter-

---

1. Oral argument was heard on June 20, 1984; at that time the defendant raised contentions not previously articulated in its briefs. The parties were afforded the opportunity to submit supplemental briefs, and plaintiff shortly thereafter filed a supplement.

mined that there was no default, or that any default was excusable, the rights of the parties are governed by the termination for convenience clause if present in the contract; otherwise, the contractor may be entitled to an equitable adjustment.

Plaintiff allegedly experienced difficulties in the administration of the contract and defendant issued a cure letter on May 30, 1979. The contract was terminated for default pursuant to a decision of the contracting officer (CO) issued on June 23, 1979, and received by plaintiff approximately two days later.

This decision set forth the CO's conclusion that: (1) the contractor had failed to meet contractual delivery dates and was in default; and that (2) the default was not excusable. The decision included a statement that the government might reprocure the items and that, if it did, the contractor would be liable for any excess reprocurement costs. Finally, it contained a statement that this was a final decision subject to appeal pursuant to the Disputes clause of the contract, and noted particularly the possibility of appeal to the Armed Services Board of Contract Appeals.[2]

■ The contractor took no action to appeal the decision of the contracting officer, either to the agency or to this court.[3]

After the default decision was issued, the government reprocured the contract items. As a result, the contracting officer issued a second decision on July 16, 1980, assessing plaintiff the excess cost of the reprocurement. Within 12 months, plaintiff appealed directly to this court, invoking the provision of 41 U.S.C. § 609(a)(1) (1982).

### Plaintiff's Complaint

Plaintiff's Petition, Count I, suggests that the contractor was not in default and that the CO's contrary conclusion was improper. Count II asserts that the termination should be converted to one for the convenience of the government either because plaintiff was not in default, or, alternatively, because any default was excusable.[4] As a result, the contractor feels itself entitled to compensatory relief. Count III denies liability for excess reprocurement costs, first because there was no default, and then, assuming default for the purposes of argument, because the default was excusable. Finally, in Count IV, plaintiff denies liability for excess reprocurement costs because, it says, the government failed to properly mitigate in connection with the reprocurement.

### Questions Presented

■ Defendant contends that the CO's 1979 decision which terminated the contract for default was a decision on a claim by the government against the contractor.[5] This decision (so the argument runs), not having been appealed either to the agency board or to this court within 12 months of its issuance[6], is entitled to finality under the CDA.[7] Thus the conclusions reached

---

2. The contract was entered into prior to the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 601–613 (1982). Hence, the contract's disputes resolution process envisioned only appeals to the agency and not direct access to this court.

3. Since the claim was "pending" on or "initiated" after March 1, 1979, the contractor could *elect to proceed under the CDA.* 41 U.S.C. § 601 note (1982) (Effective Date).

4. The term "excusable" is employed throughout this opinion merely as a shorthand expression for the precise contract language referring to a default which is beyond the control of, and without the fault or negligence of, the contractor.

5. 41 U.S.C. § 605(a) provides in pertinent part:

"(a) All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. All claims by the government against the contractor relating to a contract shall be the subject of a decision by the contracting officer. The contracting officer shall issue his decisions in writing * * *."

6. *See* 41 U.S.C. § 609(a).

7. 41 U.S.C. § 605(b) provides in pertinent part:

"(b) The contracting officer's decision on the claim shall be final and conclusive and not subject to review by any forum, tribunal, or Government agency, unless an appeal or suit is timely commenced as authorized by this Act. * * * *"

therein regarding default and excusability are not subject to review in any way by this court.[8] The government also urges the view that the time limitations attaching to an action in this court are jurisdictional, and not subject to waiver by any party or to extension by the court.

Accordingly, the government asserts that plaintiff's Counts I, II, and III, as they seek review of the conclusions as to default and excusability, are now beyond the court's jurisdiction and must be dismissed.

While cases in both the Claims Court and the Court of Appeals for the Federal Circuit have examined the finality provisions of CDA, defendant suggests that this may be the first time that such question was addressed in terms of the threshold issue here, namely: the interaction of the finality provision with the provision concerning the nature of the "claim" and the identity of the party asserting such claim (41 U.S.C. § 605(a) and (b)).

At the suggestion of the court, both parties addressed the recent decision issued in *D. Moody & Co., Inc. v. United States*, 5 Cl.Ct. 70 (1984) (interlocutory appeal denied). While that decision does not control here, it nonetheless represents a comprehensive and scholarly discussion of the *Fulford* doctrine and adopts it in a factual context not at all dissimilar from that presented here. There the court held that when a contractor timely appeals an assessment of excess reprocurement costs, it may also question a default termination not previously appealed.

As might be expected, plaintiff in the instant case urges the adoption of the rationale of the *Moody* court. Defendant, on the other hand, urges that the issues presented to the *Moody* court did not en-

compass the issue now raised here. The court in *Moody* addressed the issues of jurisdiction and finality under the CDA, 41 U.S.C. § 605(b) (which in all relevant respects is similar to the finality provisions of the standard Disputes clause) against a background of interrelated contract clauses; in short, finality was viewed against the multiplicity and succession of decisions anticipated in the Default clause and hence, as enunciated in the *Fulford* doctrine, it was determined that the CO's decision on the default was not a "final" decision so as to be entitled to finality under the Act.

In the instant case, the focus is on the portion of the CDA, 41 U.S.C. § 605(b), which states that finality attaches to the contracting officer's decision on "the claim" and that, now, "the claim" is clearly delimited by the corresponding provisions of 41 U.S.C. § 605(a). If the decision is on a claim which meets the definition of § 605(a), then the decision is entitled to finality; according to the government's contentions here, the nature or multiplicity of claims which may be brought under the Default clause is no longer the controlling factor in determining finality.[9]

## DISCUSSION

In short, plaintiff contends that it may, together with any review of the CO's 1980 decision assessing excess reprocurement costs, also seek review of the 1979 decision terminating the contract for default. The government, on the other hand, asserts that the 1979 decision, and the conclusions reached therein, are now beyond the court's review inasmuch as that decision was not timely appealed.

---

**8.** Finality attaches only to the CO's conclusions. The factual findings which may appear in the decision (although not required) are not binding in any subsequent proceeding. 41 U.S.C. § 605(a).

**9.** It is unfortunate that the arguments of the parties were not set forth clearly and comprehensively, but instead were presented in a somewhat piecemeal fashion during the course of different lawsuits. Nonetheless, it is recognized

that the CDA has been in effect only a few short years, and that new controversies and interpretations may evolve as contracts are awarded and administered under the Act. The government is entitled to put forth new legal contentions in support of its arguments as they become apparent, at least until such time as binding precedent is established by the Court of Appeals for the Federal Circuit.

## A. Jurisdiction and Statute of Limitations

The Claims Court has jurisdiction "to render judgment upon any claim by or against, or any dispute with, a contractor arising under section 10(a)(1) [41 U.S.C. 609(a)(1)] of the Contract Disputes Act of 1978." 28 U.S.C. §§ 1491(a)(2).

■ The statute of limitations for actions in this court is established generally as six years.[10] The CDA provides that an action may be brought directly in this court from a decision by the contracting officer initiated within 12 months of receipt of the decision. 41 U.S.C. 609(a)(3). This more particular statute of limitations, rather than the provision addressing the court generally, governs any suits brought under the Act. *Cf. Air Express International Corp. v. United States*, 194 Ct.Cl. 517, 521, 439 F.2d 157, 159–160 (1971).

Accordingly, the applicable statute of limitations here is 12 months and any suit initiated thereafter is untimely and beyond this court's jurisdiction.

As noted above, this court has been granted jurisdiction over claims and disputes arising under the CDA. The finality provision of the Act (41 U.S.C. § 605(b)) speaks only to a CO's decision "on the claim." This court must determine whether and to what extent the CO's 1979 decision that the contract was terminated for default is such a decision. This analysis, given the defendant's contentions here, necessarily involves discussion of the meaning of the "claims" referred to in 41 U.S.C. § 605(a).

## B. Direct Access and All Disputes Resolution

■ 41 U.S.C. § 609(a)(1) provides "direct access" to this court for appeal from decisions of the CO. This provision was the subject of extensive discussion in hearings on the CDA. Sen.Rep. No. 1118, 95th Cong., 2d Sess., at *e.g.* 5, *reprinted in* 1978

U.S.Code Cong. & Ad.News 5235, at *e.g.* 5239; H.R.Rep. No. 1556, 95th Cong., 2d Sess. (1978).

Prior to the Act, some actions, principally those "relating to" a breach of contract claim, were brought in court; others, particularly claims for equitable adjustments "arising under" the contract, were taken to agency boards. This bifurcation was perceived to be unwieldy and to retard rather than foster efficient administration of justice and resolution of contract disputes. The new scheme envisioned an essentially concurrent jurisdiction by both the agency boards and the court.

As part of this scheme, the CO would become the focal point for *all* contract disputes and, from the CO's decision, appeal would lie in either the board or the court. Hence, 41 U.S.C. § 605(a) is referred to as the "all disputes" clause. Apart from the desire to provide concurrency between the boards and the court in order to avoid inefficient bifurcation and jurisdictional controversy, there was a need to provide for "direct access" which was inextricably entwined with the "all disputes" clause in that direct access is necessary to redress any diminution of forum resulting from channelling all controversies through the CO.

The scope of "claims" in 41 U.S.C. § 605(a) must be read against this background. Consonant with the purposes of CDA, the term is to be given a broad definition encompassing all claims and disputes, whether arising under or related to the contract.

## C. "Claims" Generally

### 1. What Constitutes a Claim

41 U.S.C. § 605 indicates that all claims by the government against the contractor, and all claims by the contractor against the government (submitted in writing and, if appropriate, certified by the contractor)

---

**10.** This provision parallels that in 28 U.S.C. § 2401, which is applicable to the district courts. Section 2401 (but not section 2501) was amended by the CDA to provide that the 6-year statute of limitations applies *except* with respect to cases under the CDA. 28 U.S.C. § 1346(a)(2) specifically withholds CDA jurisdiction from district courts.

shall be decided (in the first instance) by the CO. Neither the CDA nor its legislative history contains a specific definition of the terms "claims."

█ While not controlling here, as it is not incorporated in the instant contract, the court notes that the recently promulgated 32 DAR C.F.R. § 1–7.103.12 (1983) contains a definition of what constitutes a claim in subparagraph (c)(1), as follows: "a written demand or assertion by one of the parties seeking, as a matter of right, the payment of money, adjustment, or interpretation of contract terms, or other relief arising under or relating to this contract." [11] That definition appears to be consonant with the CDA, and the circumstances of this case fit comfortably within it. For purposes of resolving the issues presented here, the court adopts it to define the term "claim."

### 2. Statement of a Claim

█ The requirements for how a claim should be stated have been briefly addressed by the courts. The rights being asserted must of course be set forth and additionally the relief being sought should be specified. If monetary compensation is sought, the amount must be stated with particularity or clearly identified; if other relief is sought, it must be specified. *See Tecom, Inc. v. United States*, 732 F.2d 935 at 936 (Fed.Cir.1984).

### 3. Identity of Claimant

█ In addition to the nature and specificity of the claim, it may also be relevant to consider the identity of the party which is asserting the claim, particularly inasmuch as a given circumstance may generate assertions of rights by both parties to the contract.[12] This may be particularly

important where the identity of the claimant carries with it a requirement for certification which, in turn, affects the finality of the decision which is the subject of the appeal and consequently determines this court's jurisdiction. *See, e.g., Skelly and Loy v. United States*, 231 Ct.Cl. 370, 685 F.2d 414 (1982).

█ For example, the assertion of its right to collect liquidated damages by reason of the contractor's tardiness is clearly a claim by the government against the contractor, and a CO's decision in this connection is final; this finality is not dimished by any absence of certification by the contractor when it seeks solely to defend against the government's assertion of its claim for liquidated damages. *See Ruhnau-Evans-Ruhnau Assoc. v. United States*, 3 Cl.Ct. 217 (1983).[13] On the other hand, if the contractor further asserts, in addition to its defense of the government's claim, its right to additional relief such as extensions of time and/or money (under such contract clauses as the Changes or Differing Site Conditions clauses), then this portion of the dispute may be identified as a claim by the contractor against the government requiring submission in writing and, if in excess of $50,000, certification. *See, e.g., Warchol Constr. Co., Inc. v. United States*, 2 Cl.Ct. 384 (1983).

█ For purposes of the instant case, noting the provisions of 41 U.S.C. § 605(a) which require the contractor's written submission (and certification if appropriate) of its claims against the government, no decision by the CO, even if it purports to be a final decision, is entitled to finality under the CDA when it resolves a contractor

---

11. Routine requests for payment, such as submission of as yet undisputed vouchers, are not considered to be "claims" under subparagraph (c)(2) of this Disputes clause.

12. It is presently unclear as to whether, and to what extent, "mirror image" claims are merged and how any "race to the CO" might impact certification requirements and the related interest provisions of 41 U.S.C. §§ 605(c) and 611. This opinion does not explore these questions

generally, but rather discusses only those specific claims presented in this case.

13. If a claim is by the contractor, interest runs from the date the CO receives the claim "from the contractor". 41 U.S.C. § 611. This provides, by statute, a right to interest not previously afforded a contractor. The Disputes Act, however, does not provide for interest in the alternative, *i.e.*, on claims by the government from the date of the CO's decision.

claim not submitted to the CO by the contractor.

### D. The Default Clause

#### 1. Generally

In the fact statement above, the Default clause was described generally. It is now appropriate to restate that discussion with greater particularity and taking into account the definition of a "claim" as elucidated above.

The first paragraph of the Default clause provides that the government has the right to terminate the contract for the contractor's default. The right to terminate the contract, by definition, relieves the government of its obligation to pay the price specified in the terminated contract.

Additionally, the clause provides that the termination of the contract affords the government the right to take possession of certain work-in-progress or other property in exchange for payment either as agreed by the parties or as determined through the general disputes resolution machinery. This subclause is not in issue in this case.

Further, the clause provides that the termination of the contract brings with it the right of the government to reprocure the contract.[14] The relief to which the government is entitled by reason of the need to relet the contract is, under the provisions of the Default clause, the recovery, through assessment against the contractor, of excess reprocurement costs.[15]

The clause provides that the contractor may avoid liability for those costs if the default was excusable. Thus, excusability affords the contractor with a defense to the assessment. (While not specified in the contract clause, the contractor may also, as a matter of law, defend against a repro-

curement assessment on the grounds that the government failed to mitigate properly.)

Finally, the clause provides that, if it is determined for any reason that the contractor was not in default or that the default was excusable, the rights of the parties shall be governed (here) by the Termination for Convenience clause. In a termination for convenience, the contractor may seek by way of relief, to recover the costs incurred prior to termination, plus reasonable profit. Such costs of course would be subject to knowledge of and computation by the contractor and would be urged by the contractor. The convenience termination clause does not restore the government's liability, relieved by the default termination, for payment of the contract price (except insofar as the contract price would, under the clause, operate as a ceiling on the amount of recovery under that clause).

#### 2. The Government's Claims

■ Based on the foregoing discussion, it is clear that the CO's 1979 decision was a decision entitled to finality, if not timely appealed, with respect to the government's claim against the contractor in the following particulars. First, the determination that the contractor was in default, and the assertion that the government therefore had the right to terminate the contract. Second, the determination, implicit in the termination, that the government was relieved of its obligation to pay the contract price (a known and easily identified amount). Accordingly, inasmuch as the contractor did not timely appeal the 1979 decision, the determination of default, *inter alia*, is now final and not subject to review in this tribunal.

---

14. But for the presence in the contract of a Default clause, the contractor's default would constitute a breach of contract. The government would then be entitled to sue for breach damages, including the value of the goods which the contractor failed to furnish. As in any such breach action, the government would be obligated to mitigate its damages through reprocurement.

15. The right under the contract to reprocure does not carry with it any provision for assessment against the contractor of a penalty or liquidated damages (as might be attributable to administrative expense) in an amount certain and easily identified. Rather, the recovery is dependent upon the actual reprocurement and the excess cost thereof—costs then known to the government.

■ The 1979 decision also asserted the government's right to reprocure, but the relief sought as a result of such reprocurement could not at that time be completely or specifically stated inasmuch as that relief consisted of an assessment of excess reprocurement costs not then known. The statement of the claim by the government against the contractor was not complete until the 1980 decision determined the specific amount of relief sought in the assessment of excess reprocurement costs. The contractor's action here asserts a timely appeal from the 1980 decision and this court may thus review that decision. Specifically, the contractor may contest the propriety of the government's reprocurement and mitigation. Moreover, the contractor may defend against the assessment on the grounds of excusability for the reasons stated below.

The 1979 decision contained a statement that the contractor's default was not excusable. For purposes of deciding the government's claim, it was enough to conclude that the contractor was in default; this enables the government to terminate the contract, to be relieved of any obligation to pay the contract price, and to assert the right to reprocure.

■ According finality to any conclusion as to excusability would improperly pretermit the right of the contractor to submit and assert its own claim for termination for convenience (of which excusability is an essential element) as discussed below, and/or to assert a defense against liability for the excess reprocurement cost assessment. With respect to a defense of the excess cost assessment, the effect is the same as if the CO determined, *sua sponte*, that the reprocurement and mitigation was proper and sufficient, thereby cutting short the contractor's right to defend against the assessment. Moreover and most importantly, the conclusion that the default was inexcusable was, unlike the determination of the default itself, wholly unnecessary and gratuitous to a decision on the government's claim.

Thus, the contractor may defend against the 1980 assessment claiming that the default (which has now been conclusively determined by virtue of the unappealed 1979 decision) was excusable or that the mitigation efforts of the government were insufficient.

### 3. The Contractor's Claims

■ As in the case of *Warchol, supra,* the issues here concern not only defenses of the contractor to claims by the government but also affirmative claims by the contractor. As discussed above, the Default clause provides that a contractor may seek to have the termination treated as one for convenience of the government (and thereby become entitled to recover costs plus profit). Plaintiff here seeks to bring such claims within this court's jurisdiction and to have the court determine that either there was no default or the default was excusable.

As discussed above, the finality of the CO's 1979 decision is conclusive on the matter of default and that determination is now binding; no such finality attaches to the CO's 1979 determination that the default was inexcusable.

However, in this connection, the claim being asserted is clearly one by the contractor against the government. The contractor seeks to assert its right to a convenience termination and, accordingly, seeks to recover its costs plus profit. *Essex Electro Engineers Inc. v. United States,* 702 F.2d 998 (Fed.Cir.1983).

A claim by the contractor, such as this, must be submitted "in writing" to the CO (and, if the amount claimed is in excess of $50,000, the claim must be certified). 41 U.S.C. §§ 605(a) and (c). Absent such proper submittal of a claim, and a decision by the CO on the claim, the provisions of 41 U.S.C. § 605(b) do not apply and there is no decision susceptible to an action in this court under 41 U.S.C. § 609(a)(1).

Thus, the portions of plaintiff's complaint seeking to recover for a termination for convenience must be dismissed by reason of finality of the CO's 1979 decision

(with respect to the default) and for lack of jurisdiction (with respect to the element of excusability). Plaintiff may submit a claim to the CO as appropriate.[16]

### CONCLUSION OF LAW

Based on the foregoing discussion, it is concluded that the CO's 1979 decision determining that the contractor was in default and terminating the contract on that basis, is a decision on a claim by the government against the contractor and, in the absence of a timely appeal, is final and not subject to review by this court. Accordingly, Count I of the petition must be dismissed for lack of jurisdiction. (Such finality does not extend, however, to the issue of whether the default was excusable.)

It is further concluded that Count II of the petition, which seeks a determination that the termination was not for default but was for the convenience of the government, and which further seeks to recover the costs incurred in contract performance (and any profits thereon) under the termination for convenience clause, must be dismissed as beyond this court's jurisdiction. In the absence of the written submittal of such a claim to the CO (with certification if appropriate), and the issuance of a decision on such claim, this court lacks jurisdiction. (As with Count I, it is noted here that the CO's 1979 decision concerning the contractor's actual default, though not the excusability therefor, is now final and not subject to review or re-determination. Thus, a termination for convenience claim can only lie with respect to the issue of excusability.)

It is further concluded that, for the reasons noted with respect to Count I above, that portion of Count III which seeks to protest the assessment of excess reprocurement costs by contesting the determination of default by the contractor must be dismissed for lack of jurisdiction. That portion of Count III which relates to the issue of the excusability of such default remains properly before the court.

To the extent consistent with the above, defendant's motion to dismiss is granted in part and denied in part. Pursuant to Rule 54(b), it is determined that there is no just reason for delay in entering judgment with respect to Counts I, II, and portions of III.

Accordingly, the Clerk is hereby directed to enter a final judgment dismissing Counts I and II in their entirety and Count III to the extent it seeks to protest the assessment of excess reprocurement costs by alleging no default by the contractor.

Defendant's motion is denied with respect to that portion of Count III which seeks to protest the assessment of excess reprocurement costs by alleging that the contractor's default was excusable. This portion of the petition, together with Count IV which protests the assessment of excess reprocurement costs by alleging that the government failed to sufficiently discharge its duty to mitigate damages, are still before the court.

### Certification

The issue for decision on that portion of defendant's motion which is denied herein (relating to Count III and the excusability of the default in connection with excess cost assessment), in this court's opinion, involves a controlling question of law with respect to which there is a substantial ground for difference of opinion, and immediate appeal from the order entered herein may materially advance the termination of the litigation. Accordingly, this opinion is certified for immediate interlocutory review, pursuant to 28 U.S.C.A. § 1292(d)(2) (West Supp.1984), should either party seek such appeal.

### Further Proceedings

Counsel for the parties are to confer and are to file, within 60 days, a statement re:

---

**16.** Plaintiff may submit such claim at any time as is appropriate pursuant to the Default clause. It may do so now, while the instant case is pending, or it may await any determination herein (with respect to the excess cost assessment) that the default was excusable. *See also* 41 U.S.C. § 609(d).

the further proceedings deemed appropriate for resolution of the issues now outstanding in this case. This schedule is to be stayed in the event of an appeal from the decisions herein (either final or interlocutory). The advice called for herein shall then be due within 60 days of the date of any decision by the Court of Appeals for the Federal Circuit on such appeal. *See also* 28 U.S.C.A. § 1292(d)(3) (West Supp. 1984).