The BOARD OF GOVERNORS OF the UNIVERSITY OF NORTH CAROLINA

v.

The UNITED STATES.

No. 88–85C.

United States Claims Court.

May 6, 1986.

costs, no reason exists for any further proceedings in this regard.

David E. Broome, Jr., Sp. Asst. Atty. Gen. of North Carolina, Raleigh, N.C., for plaintiff.

Carol N. Park, with whom was Asst. Atty. Gen. Richard K. Willard, David M. Cohen, Director, and Thomas W. Petersen, Asst. Director, U.S. Dept. of Justice, for defendant. Robert Sonenthal, Agency for Intern. Development, Washington, D.C., of counsel.

## OPINION

YANNELLO, Judge.

The facts relevant to defendant's pending Motion to Dismiss are not in dispute and may be briefly stated.

The University of North Carolina (UNC) entered into a contract with the Agency for International Development (AID) in 1971. The contract provided for reimbursement of UNC's costs, including overhead. The amount of reimbursement was initially based on stated provisional rates, with adjustments based on subsequently-known actual costs to be arrived at later.

For the period July 1, 1971, to June 30, 1974, UNC billed AID and was reimbursed an amount equal to 33.16 percent of salaries for on-campus work and 18.04 percent of salaries for off-campus work. On January 23, 1974, the parties entered into a contract amendment establishing final overhead rates for that time period at 48.13 and 36.17 percent, respectively, for on-campus and off-campus work.

The rates established in the 1974 contract amendment also formed the basis for provisional rates for periods on and after July 1, 1974. UNC billed and was reimbursed at these rates through February 14, 1975.

In February 1975, UNC and AID executed a novation agreement transferring future rights to a third party, and on May 26, 1977, pursuant to a negotiated agreement, the final overhead rates for the period July 1, 1974, to June 30, 1975, (previously billed and reimbursed at provisional rates established in the 1974 contract amendment as discussed above) were established as 54.8 and 40.6 percent, respectively, for on-campus and off-campus work.

By letter dated March 9, 1979, UNC advised the contracting officer (CO) that "[f]or some inexplicable reason," UNC had never billed AID for $274,858.09, representing two items:

(1) $238,946.65, representing the difference between the provisional and final rates for the 1971 to 1974 period; and

(2) $35,911.44, representing the difference between the provisional and final rates for July 1, 1974 to June 30, 1975.

Plaintiff was asked to submit a voucher for these amounts, and did so on January 6, 1981.

The claim was certified on December 27, 1983, and the CO issued his decision denying the claim on February 16, 1984. The instant suit was filed on February 13, 1985.

There is no question in this case that the suit was initiated within 12 months of the receipt by UNC of the CO's decision under

the provisions of 41 U.S.C. § 609(a)(1) and (3). Rather, defendant's motion is based on the grounds that this court lacks jurisdiction because the statute of limitations contained in 28 U.S.C. § 2501 allegedly expired before the instant suit was filed (and, indeed, before the contractor elected, through certification of its claim to the CO, to proceed under the Contracts Disputes Act of 1978 (CDA), 41 U.S.C. §§ 601 *et seq.*, and avail itself of the provisions of that Act).

### Discussion

The critical time periods here may be summarized as follows: With respect to the first item of the claim, the billing periods were from July 1, 1971, to June 30, 1974, and the amendment to the contract establishing the final rates was executed on January 23, 1974. With respect to the second item of the claim, the billing periods were from July 1, 1974, to February 14, 1975, and the novation agreement establishing the final rates was entered into on May 26, 1977.

1. Defendant urges, and the court agrees, that a cause of action accrues on the date upon which all events have occurred entitling plaintiff to relief. Defendant contends, further, that UNC was fully entitled to present a demand for payment to AID in May 1977, at the latest, when the final reimbursement rates were agreed upon, and thus the claim accrued at that time. *See Lins v. United States*, 688 F.2d 784, 787, 231 Ct.Cl. 579 (1982), *cert. denied*, 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 995 (1983).

During argument of the pending motion, it was also noted that there was apparently, in the contract or otherwise, no limitations period in which UNC was obligated to present its demand for payment to defendant. Moreover, as plaintiff pointed out in its response brief at page 7, defendant could not have been said to have violated any terms of the contract's payment obligation until demand for payment was made and payment was refused. This matter was not fully argued or briefed, however.

In any event, in view of the results reached in this opinion, even based on the dates characterized by defendant as being the dates of the accrual of the causes of action, this matter need not be discussed further.

2. There appears to be a good deal of confusion in the briefs, particularly in plaintiff's brief, as to the nature of this claim. The confusion

Defendant urges that, even taking the latest possible date of accrual of this claim, May 26, 1977, UNC's claim here, initiated in 1985, is time-barred.[1] The statute of limitations relied upon, 28 U.S.C. § 2501, provides that claims over which this court has jurisdiction must be brought within six years of the date they accrue. Such claims are, primarily, claims under the Tucker Act, 28 U.S.C. § 1491, including claims arising under a contract.

Generally stated, such Tucker Act contract claims would have included the instant suit—a suit for breach of contract for failure of the government to pay cost reimbursements as required by the contract. UNC could have initiated such suit in this court, in the first instance, between 1977 and 1983.[2]

However, on March 1, 1979, the provisions of the CDA became effective. The CDA applied to all contracts, as defined in that Act, which were entered into thereafter; it also allowed the contractor who had claims arising under contracts entered into before that date, which were either pending before the CO at the time of the

arises in construing a claim not only under the Tucker Act, but under the terms of specific contracts entered into at various times and pursuant to various agency regulations.

Many of these contracts permitted redress in the form of equitable adjustments under the contract itself and required resort to the CO, in the first instance, and, thereafter, to agency boards of contract appeals to seek such redress. Only after the boards had issued a decision would an appeal lie in the Court of Claims.

On the other hand, resort could be had to this court, in the first instance, for any claim for breach of contract (and where redress was not available under the contract). Suffice it here to say that a failure-to-pay suit, absent any contractual provision for equitable adjustment or requirement of submission of disputes to the CO, had been construed as a claim for breach of contract, cognizable *de novo* in this court. *See, e.g., Bird & Sons, Inc. v. United States*, 190 Ct.Cl. 426, 420 F.2d 1051 (1970).

Thus, under the Tucker Act, the instant claim would most likely have been construed as one for breach of contract in which pursuit of any administrative remedy was not required prior to bringing suit in this court and would have been subject to the six-year limitations period.

Act or initiated thereafter, to elect to proceed under the CDA. In proceeding under that statute, all disputes and all claims (whether breach of contract claims or claims for redress "under" the contract) were subject to a singular treatment: all must be submitted to the CO.

■ Thus, the CDA provided that, for a claim such as UNC's, presentment must first be made to the CO (as contrasted with a Tucker Act breach of contract claim which could be presented directly to this court.) However, the CDA provided no limitations period in which claims must be presented (or certified) to the CO. (It did provide a limitations period in which suits contesting the CO's decision could be brought in this court, but, as noted at the outset, that provision is not in issue here.)[3] The contractor here elected to proceed under the CDA when, in December 1983, it certified its claim to the CO.[4]

■ Defendant argues that UNC's attempt to elect to proceed under the CDA should not be countenanced, since, at the time it certified its claim (in December 1983), the general six-year statute of limitations had already expired with respect to the cause of action accruing, at the latest, in May 1977. In this context, the defendant's linkage of the presentment of claims under the CDA and the general statute of limitations is without foundation. The CDA provides no limitations period for the presentment (and proper certification) of claims. The general statute of limitations, 28 U.S.C. § 2501, applies only to suits over which this court has jurisdiction. Under the CDA, this court has no jurisdiction until a decision has been issued by the CO (or he fails to timely issue such a decision, which

is not in issue here), following the proper presentment of the claim to him.

Thus, we can find no basis for applying the general six-year statute of limitations with respect to suits over which this court has jurisdiction as the limitations period for the presentment of a claim to the CO under the CDA—which provides no limitations period for such presentment.

■ Moreover, defendant argues that the enactment of the CDA—with its absence of limitations periods in which to elect to proceed under the Act and to present certified claims to the CO—cannot be used as a vehicle to resurrect claims which would otherwise be extinguished by the general six-year statute of limitations.

This argument might be more persuasive with respect to a claim which was extinguished, by virtue of the six-year limitations period, as of March 1, 1979, when the CDA became effective. Only with respect to such extinguished claims might the CDA be construed as giving new life. That, however, is not the situation here.

Here, UNC's claims for breach of contract under the Tucker Act, to which the six-year limitations period would apply, remained viable and extant at the time of the CDA in 1979. With respect to such claims, the CDA gave to the contractor an election to pursue whichever avenue it desired, either suit under the Tucker Act or the CDA. The contractor could thus elect whichever avenue afforded the longer limitations period (in this case the CDA which contained no limitations period for the mandatory presentment of claims, of whatever nature, to the CO).[5]

Thus, the CDA was not giving new life to an otherwise barred or extinguished claim.

---

3. The CDA limitations period relating specifically to suits in this court contesting CO's decisions under the CDA governs, to the exclusion of the more general statute of limitations contained in 28 U.S.C. § 2501. *See, e.g., Z.A.N. Company v. United States,* 6 Cl.Ct. 298 (1984).

4. UNC initially presented its claim in uncertified form in 1979, but the CDA requires certification, and without it the initial presentation is a nullity.

5. Because of the CDA's requirement that all claims, whether breach claims or claims seeking redress "under" equitable adjustment provisions of the contract, be presented to the CO, the parties' arguments concerning the effect, on periods of limitations, of permissive and mandatory administrative remedies are inapposite to a discussion of the CDA.

It is concluded that UNC could here elect to proceed under the CDA and, upon so doing, could take advantage of the statute of limitations (or lack thereof) in that Act, in presenting its claim to the CO (in lieu of proceeding on a Tucker Act breach of contract claim before this court in the first instance).[6]

## CONCLUSION

Based on the foregoing, it is concluded that defendant's Motion to Dismiss for lack of jurisdiction based on the bar of the statute of limitations contained in 28 U.S.C. § 2501, is DENIED.

The parties shall file a Joint Report re: Further Proceedings within 60 days of the date of this decision, proposing further appropriate proceedings and a schedule therefor.

---

**6.** This is not to say, of course, that contractors can pursue claims under the CDA, by presentment to the CO, at any indefinite periods of time. The doctrine of laches might be applied where the presentment was not made within a reasonable period, resulting in prejudice to defendant. However, this matter is not before the court at this time, and additional factual allegations would be needed to enable such consideration.