**PATHMAN CONSTRUCTION COMPANY, INC., Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

No. 136–85C.

United States Claims Court.

May 30, 1986.

On Motion for Reconsideration
June 26, 1986.

John F. Elger, Atlanta, Georgia, for plaintiff. Jennifer W. Fletcher, Jeanette R. Hait and Griffin, Cochrane & Marshall, of counsel.

Carol N. Park-Conroy, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant. David M. Cohen, Director, and Thomas W. Petersen, Asst. Director, of counsel.

## OPINION ON DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

PHILIP R. MILLER, Judge:

This case arises from a contract dispute between plaintiff, Pathman Construction Company, Inc., and the United States. Plaintiff seeks an equitable adjustment of $522,907.28. Defendant moves for dismissal on the ground that the claim is untimely.

### I. *Statement of the Case*

Pathman Construction Company, Inc. contracted with the General Services Administration (GSA) for the installation of interior finishings in the John C. Kluczyn-ski Federal Office Building in Chicago, Illinois. The original contract completion date was August 29, 1974. The project did not achieve substantial completion until September 23, 1975, although various activities continued into 1976.

On September 28, 1976, Pathman submitted a claim for equitable adjustment in the amount of $428,608.17, requesting duration-related costs on behalf of itself and its two principal subcontractors. Several meetings with GSA representatives produced no settlement.

On May 10, 1978, the contracting officer acknowledged that plaintiff was entitled to an equitable adjustment and a time extension through March 17, 1975. GSA made a settlement offer for this 148 day extension of $202,000, which plaintiff rejected. The contracting officer informed plaintiff that an audit had been requested to determine cost entitlement and no further action would be taken until its completion. The government audit was conducted from May through July 1978. The audit report was issued August 17, 1978.

Despite numerous inquiries by plaintiff for a decision, by 1981 no final decision had been issued. On February 16, 1981, plaintiff's attorney submitted a written request for a final decision to the contracting officer, stating that GSA inaction had forced plaintiff to "take steps to insure that [the claim] is handled expeditiously." No decision was issued however.

On May 6, 1983, plaintiff submitted a request for a final decision that contained the certification required by the Contract Disputes Act (CDA), 41 U.S.C. § 605(a), for claims exceeding $50,000. Several meetings were held during this period in an unsuccessful attempt to settle the claim. To date, no decision has been issued. Plaintiff commenced this suit on March 11, 1985, pursuant to 41 U.S.C. § 609(a).

Defendant moves to dismiss the claim, or in the alternative for summary judgment, contending that this court has no jurisdiction because plaintiff's suit was not timely filed under either 28 U.S.C. § 2501 or the

Contract Disputes Act, 41 U.S.C. § 609(a)(3), and that plaintiff has delayed unreasonably in instituting its action. Plaintiff opposes defendant's motion.

## II. *Applicability of 28 U.S.C. § 2501*

Defendant argues that the claim is barred by the 6-year statute of limitations under 28 U.S.C. § 2501, because contract performance was completed in September 1975 and more than 6 years elapsed before the filing of this suit. Defendant contends that § 2501 applies because plaintiff is proceeding under the disputes clause of its contract, having not made a "conscious and unwavering" election of its remedies under the Contract Disputes Act.

█ It is settled that a judicial claim under a mandatory disputes clause does not ripen so as to trigger the statute of limitations until a final decision on the claim has been rendered by a board of contract appeals. *Nager Electric Co. v. United States,* 177 Ct.Cl. 234, 244, 368 F.2d 847, 854 (1966). *See also Crown Coat Front Co. v. United States,* 386 U.S. 503, 509–10, 87 S.Ct. 1177, 1180–81, 18 L.Ed.2d 256 (1967). Here, there exists no administrative board decision because the contracting officer has not issued a decision that plaintiff may appeal. Plaintiff would be unable to avail itself of this court's jurisdiction until such time as its administrative remedies had been exhausted. Rather than being barred, plaintiff's claim would not yet be ripe.[1]

## III. *Election of Contract Disputes Act*

Plaintiff contends that it did elect to proceed under the Contract Disputes Act and therefore 28 U.S.C. § 2501 is not applicable. Defendant concedes that plaintiff was eligible to elect the CDA because its claim was pending before a contracting officer on the effective date of the Act, March 1, 1979. However, defendant argues that plaintiff did not make an explicit election to proceed under the CDA and mere compli-

ance with the certification procedure is insufficient.

Defendant relies on *Tuttle/White Constructors, Inc. v. United States,* 228 Ct.Cl. 354, 656 F.2d 644 (1981), in which the Court of Claims held that a contractor's failure to express an election of the CDA was an election to proceed under the disputes clause. But in that case, the contracting officer had requested the contractor to inform him whether or not it elected to have the dispute subject to the CDA. When the contractor filed its notice of appeal to the Armed Services Board of Contract Appeals without any reference to the CDA, and raised no objection when notified that its claim was being processed under the disputes clause, the Court of Claims construed its silence to be an election of the disputes clause remedy before the ASBCA.

In requiring that a contractor make a "conscious and unwavering election", the court did not mean to require that contractors expressly state their election. It explained (*id.,* 229 Ct.Cl. at 359; 656 F.2d 647): " * * * had plaintiff not responded to the contracting officer and to the board as it did, it clearly could have done nothing for almost 12 months and then could have availed itself of direct access to this court * * *. *In choosing direct access it would of necessity have had to invoke the act.*" (emphasis added) The court only demanded conduct necessarily indicative that plaintiff has made a *choice* between remedies. Here, plaintiff followed procedures that were necessary only under the CDA. Certification and submission of the claim is a clear indication that plaintiff elected to invoke the CDA process.

█ Because the CDA applies, defendant's reliance on 28 U.S.C. § 2501 is misplaced. Once a contractor elects its remedies under the CDA, 28 U.S.C. § 2501 is rendered inapplicable. *See LaCoste v. United States,* 9 Cl.Ct. 313, 314 (1986);

---

1. For the same reason, defendant is mistaken in its assertion that, at the time plaintiff certified its claim, that claim was already time barred.

*See Board of Governors of the University of North Carolina v. United States,* 10 Cl.Ct. 27, 30–31 (Cl.Ct.1986).

*Kasler/Continental Heller/Fruin Colnon v. United States,* 9 Cl.Ct. 187, 189–90 (1985); *Z.A.N. Co. v. United States,* 6 Cl.Ct. 298, 303 (1984). *But see Turner Construction Co. v. United States,* 9 Cl.Ct. 214, 216 (1985) (28 U.S.C. § 2501 applies to direct access suits from "deemed" decisions).

### IV. *Applicability of § 609(a)(3) to a Deemed Adverse Decision by Contracting Officer*

Defendant contends that even if the CDA applies, plaintiff's claim is untimely. The thrust of its argument is that because the CDA mandates that inaction by the contracting officer on the claim for a stated number of days "will be deemed a decision by the contracting officer denying the claim", 41 U.S.C. § 605(c)(5), the 12-month limitations period applicable to suits on a claim after an adverse decision by the contracting officer was triggered as a matter of law when the contracting officer failed to render a timely decision. Under this logic, the period for bringing plaintiff's claim in this court expired not later than July 15, 1984, and this suit, filed March 11, 1985, was therefore untimely.

In opposition, plaintiff responds that the 12-month statute of limitations of 41 U.S.C. § 609(a)(3) does not apply to suits appealing adverse decisions "deemed" to have been made pursuant to 41 U.S.C. § 605(c)(5). Four recent decisions by the Claims Court have so held: *LaCoste,* 9 Cl.Ct. 313 (1986); *Turner Construction Co. v. United States,* 9 Cl.Ct. 214 (1985); *Vemo Co. v. United States,* 9 Cl.Ct. 217 (1985); and *G & H Machinery v. United States,* 7 Cl.Ct. 199 (1985). However, despite their uniformity that § 609(a)(3) is not applicable, the views expressed in these four decisions as to congressional intent are not the same. In two, the court held that Congress intended no period of limitations on the bringing of suit after an adverse decision was deemed to have been rendered. *G & H Machinery* and *Vemo Co.* In *Turner Construction,* the court expressed the view that in such situation

Congress intended the general 6-year period of limitations provided by 28 U.S.C. § 2501 to govern, while in *LaCoste* the court thought that Congress implicitly prescribed the equitable doctrine of laches to bar the bringing of suit by a contractor who delays suit unnecessarily.

■ This court is of the view that on balance the evidence derived from other portions of the statute and from the legislative history warrants the inference that Congress did intend a fixed period of limitations on the bringing of suit by a contractor after an adverse decision by a contracting officer on the contractor's claim, and that period is 12 months, whether the adverse decision is express or imputed from the failure to act.

The pertinent statutory provisions state (41 U.S.C.):

§ 605  Decision of the contracting officer

(a) Contractor claims

All claims by a contractor * * * shall be in writing and shall be submitted to the contracting officer for a decision. * * The contracting officer shall issue his decisions in writing, and shall mail or otherwise furnish a copy of the decision to the contractor. The decision shall state the reasons for the decision reached, and shall inform the contractor of his rights as provided in this chapter. * * *

(b) Review; performance of contract pending appeal

The contracting officer's decision on the claim shall be final and conclusive and not subject to review by a forum, tribunal, or Government agency, unless an appeal or suit is timely commenced as authorized by this chapter. * * *

(c) Amount of claim; certification; notification; time of issuance; presumption

(1) A contracting officer shall issue a decision on any submitted claim of $50,-000 or less within sixty days from his receipt of a written request from the contractor that a decision be rendered within that period. For claims of more than $50,000, the contractor shall certify

that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.

(2) A contracting officer shall, within sixty days of receipt of a submitted certified claim over $50,000—

(A) issue a decision; or

(B) notify the contractor of the time within which a decision will be issued.

(3) The decision of the contracting officer on submitted claims shall be issued within a reasonable time, in accordance with regulations promulgated by the agency, taking into account such factors as the size and complexity of the claim and the adequacy of the information in support of the claim provided by the contractor.

(4) A contractor may request the agency board of contract appeals to direct a contracting officer to issue a decision in a specified period of time, as determined by the board, in the event of undue delay on the part of the contracting officer.

(5) Any failure by the contracting officer to issue a decision on a contract claim within the period required will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of the appeal or suit on the claim as otherwise provided in this chapter. However, in the event an appeal or suit is so commenced in the absence of a prior decision by the contracting officer, the tribunal concerned may, at its option, stay the proceedings to obtain a decision of the claim by the contracting officer.

§ 609. Judicial review of board decisions

(a) Actions in the United States Claims Court; district court actions; time for filing

(1) Except as provided in paragraph (2), and in lieu of appealing the decision of the contracting officer under section 605 of this title to an agency board, a contractor may bring an action directly on the claim in the United States Claims Court, notwithstanding any contract provision, regulation, or rule of law to the contrary.

\*       \*       \*       \*       \*       \*

(3) Any action under paragraph (1) \* \* shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim, and shall proceed de novo in accordance with the rules of the appropriate court.

An obvious objective of the CDA was to have a contracting officer continue to decide the merits of a contractor's claim initially. Congress thus provided: that all claims must be submitted to the contracting officer, § 605(a); that a contracting officer render a timely written decision, §§ 605(a), 605(c)(1)–(3); that where he does not, or cannot, issue such a decision, the contractor may petition the board of contract appeals to direct the contracting officer to issue a decision in a specified period of time, § 605(c)(4); and if the contracting officer does not render a timely decision, his inaction shall be deemed an adverse decision, but if the contractor brings suit or appeals, the court may nevertheless stay proceedings so as to allow the contracting officer to render an express decision, § 605(c)(5).[2]

Nonetheless, Congress was also responsive to the criticism by witnesses at the CDA hearings that contractor claims were hostage to the backlog of the contracting officers, who have had unilateral control

---

**2.** Congress' focus on having the contracting officer make the initial determination is easily understood, given: the technical complexity of many equitable adjustment claims, particularly in the construction field; the potential for multiple claims arising from a single contract; and the expertise and experience that the contract-

ing officer can bring to bear in balancing the competing equities of the claim. Congress did not wish to substitute the courts, or the contract boards, for such government official, or have his role easily bypassed or usurped. *See* S.Rep. 1118, 95th Cong., 2d Sess. 21 (1978).

over the progress of their claims. H.R. Rept. 1556, 95th Cong., 2d Sess. 18 (1978). Recognizing that delays were inevitable, as much from congestion, complexity and insufficiency of documentation as from contracting officer dereliction of duty or arbitrariness, Congress inserted § 605(c)(5) to give contractors legal recourse despite administrative delay. S.Rep. 1118, *supra* at 21, U.S.Code Cong. & Admin.News 1978, p. 5235.

Is it reasonable to conclude that Congress intended not to subject this variety of appeal or suit to a period of limitations? The legislative evidence indicates otherwise. First, if the adverse decision deemed to have been made by the contracting officer's failure to act by the date required were not in fact a decision subject to the same restrictions as any other decision, the first sentence of § 605(c)(5) would contain unnecessary and useless language. That sentence, which now reads—

> Any failure by the contracting officer to issue a decision on a contract claim within the period required will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of the appeal or suit on the claim as otherwise provided in this chapter.

would mean exactly the same as—

> Any failure by the contracting officer to issue a decision on a contract claim within the period required ~~will be deemed to be a decision by the contracting officer denying the claim and~~ will authorize the commencement of the appeal or suit on the claim as otherwise provided in this chapter.

Why would Congress have put in such language if it were not meant to have any effect?

Second, § 605(c)(5) states that suits from deemed decisions are authorized "as otherwise provided in this chapter." This means §§ 601–613 inclusive, which "expressly admits of only one limitations period, and section 609(a)(3) is the provision setting a time limitation for filing suit under the CDA." *Kasler/Continental*, 9 Cl.Ct. at 189. Suits from deemed decisions are thus subject to all the restrictions of § 609. There is simply no rational basis to apply § 609(a)(1) to allow suit and reject § 609(a)(3) to establish the time required to bring suit. "Congress has set the twelve-months limit, and this court cannot and should not read into it exceptions * * * Congress did not contemplate or authorize." *Gregory Lumber Co. v. United States*, 229 Ct.Cl. 762, 763 (1982). *See also Soriano v. United States*, 352 U.S. 270, 275–77, 77 S.Ct. 269, 273–74, 1 L.Ed.2d 306 (1957).

Third, Congress provided that a contractor who prevails by appeal or suit over an adverse decision of the contracting officer receive interest not from the date of appeal but "from the date the contracting officer receives the claim pursuant to section 605(a) of this title from the contractor until payment thereof." 41 U.S.C. § 611. Plaintiff itself notes that the certification of its claim triggered the accrual of interest. To allow contractors to delay the bringing of suit for limitless periods would expose the government to liability for limitless interest. Nothing in the statute or legislative history indicates that Congress was willing to subject the government to such a burden. *See* S.Rep. 1118, *supra* at 32.

Fourth, Congress deliberately reduced the prior period of limitations applicable to a contract suit in the Claims Court severely, from 6 years to 12 months. S.Rep. 1118, *supra*, at 33. *See also Z.A.N. Co. v. United States*, 6 Cl.Ct. 298 (1984). The legislative history of § 609 makes clear that Congress wished to avoid protracted decision-making. The Senate report stated (S.Rep. 1118, *supra* at 10–11):

> *Section 10(a)* is amended by reducing the time period from which a contractor can choose direct action in court from 12 months from the date of the contracting officer's decision, or final delivery of supplies or performance of the work under the contract of acceptance where required, whichever is later, to 12 months from the date of the contracting officer's decision. Testimony at the public hear-

ings convinced the committees that *a maximum of 12 months is sufficient for a contractor to make a decision on whether to commence action in court* and that the provisions in S. 3178, as introduced, could prolong the decision period over many years. This prolonging of the decision-making period would not be consistent with the objectives of the act. The committees do not believe that a maximum period of 12 months will in any way be detrimental to safeguarding the interest of the contractor. [Emphasis added.]

*See also id.* at 29–30, 33. There can be no question that Congress intended that contractors proceed quickly if they seek further redress.[3] A conclusion that Congress did not intend to apply a period of limitations to a particular class of adverse decisions would directly conflict with its stated purpose.

In light of these provisions, and the lack of any contrary evidence in the legislative history, the court is compelled to reject the contention that Congress meant to allow an unlimited period for a contractor to bring a direct access suit from an adverse decision of the contracting officer merely because it was imputed by law rather than express.

This court respectfully disagrees with those decisions relied upon which hold otherwise: *G & H Machinery,* 7 Cl.Ct. 199, 203 (1985), and *Vemo v. United States,* 9 Cl.Ct. 217, 220 (1985). These cases are expansive and ignore that the CDA grants a limited waiver of sovereign immunity and must be construed strictly. *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957); *Cosmic Construction Co. v. United States,* 697 F.2d 1389, 1390 (Fed.Cir.1982). They also focus on the remedial nature of § 605(c)(5), to the exclusion of the restrictive phrase

"as otherwise provided", thus concluding that the overall intent of the provision was that contractors have the "option or permission" to go forward with suit. *Vemo* at 221; *G & H Machinery* at 203. But this is equally true of suits based on express denials. Clearly Congress did not mean to require a contractor to bring suit from adverse decisions, express or deemed. As with all its remedial provisions, there was only intent to *enable* contractors to go forward. For example, § 606 provides, "[w]ithin 90 days from the date of receipt of a contracting officer's decision under section 605 of this title, the contractor *may* appeal such decision to an agency board of contract appeals, as provided in section 607 of this chapter." (emphasis added). Section 609(a)(1) is also phrased to *permit* suit in the Claims Court. But that does not warrant any inference that their respective periods of limitations are not mandatory. *Cosmic Construction Co.,* 697 F.2d at 1390.

Furthermore, not only do these cases read out of § 605(c)(5) the language that failure by the contracting officer to render a decision in the time required *"will be deemed a decision* by the contracting officer denying the claim" (emphasis added), but in addition they ignore the statutory provision that a "decision" is entitled to finality if not *timely* appealed. § 605(b). Congress made no effort to distinguish deemed from actual decisions in either § 605(b) or any of the remedial provisions. Accordingly, timeliness is a requirement for redress from any decision by the contracting officer, whether actual or deemed.

As already noted, this conclusion finds at least partial support in two of the four decisions relied on by plaintiff. *See LaCoste v. United States,* 9 Cl.Ct. at 317; and *Turner Construction Co. v. United States,* 9 Cl.Ct. at 218. Despite rejecting

---

**3.** The inclusion of a "stay" provision, § 605(c)(5), supports the inference that Congress expected rapid institution of suit or appeal due to the short period of limitations but sought to avoid requiring the tribunal selected to substitute itself for the preferred expertise of the contracting officer. There may also have been concern that failure of proof was a problem peculiar to construction and supply contracts, where claims are made concurrently with contract performance and become difficult to verify once construction or production is completed. Similarly, in construction contracts especially, the transience of the work force may have an adverse impact upon the availability of witnesses.

the 12-month period in this situation, both cases find that contractors do not have an unlimited period to bring their claims. However, they go beyond the CDA to select the appropriate period. *Turner Construction* falls back on 28 U.S.C. § 2501, which is the general period of limitations for the Claims Court. Congress expressly eliminated the 6-year period for CDA purposes, preferring more rapid resolution of disputes. Thus reliance on § 2501 is inappropriate. *See ante* at IV. *See also La-Coste*, 9 Ct.Cl. at 314–15; and *Z.A.N. Co. v. United States*, 6 Cl.Ct. at 303. Alternatively, *LaCoste* utilized "laches". This equitable doctrine, originally imposed where Congress has not set any period of limitations, should have no application in a court of law where Congress has set a fixed period. The Court of Claims regularly declined to apply any theory of laches in contract cases. *See, e.g., Standard Oil Co. v. United States*, 231 Ct.Cl. 86, 685 F.2d 1322 (1982); *Swentek v. United States*, 208 Ct.Cl. 981, 982 (1975); *Fraass Surgical Mfg. Co. v. United States*, 205 Ct.Cl. 585, 592, 505 F.2d 707, 710 (1974); *H & M Moving, Inc. v. United States*, 204 Ct.Cl. 696, 719, 499 F.2d 660, 672 (1984); *Kaiser Aluminum & Chemical Corp. v. United States*, 181 Ct.Cl. 902, 906–07, 388 F.2d 317, 319–20 (1967).

There being nothing in the statute or the legislative history to support these alternatives, it is logical to look to the CDA itself and adopt the limitations period set out expressly by Congress as appropriate for direct access suits. *See Gregory Lumber Co. v. United States*, 229 Ct.Cl. at 763. Accordingly, the court holds that the 12-months period of limitations of § 609(a)(3) applies to a suit brought from a deemed adverse decision of a contracting officer.

Plaintiff argues that because § 609(a)(3) provides that the time for bringing suit from an adverse decision runs from the date of its receipt, and that there is no date of receipt for an imputed adverse decision, Congress did not intend to apply any period of limitations to deemed decisions. This places undue emphasis upon the word "receipt." It makes receipt a condition for the application of the statute of limitations rather than merely the fixing of an effective date for the commencement of the running of the period in the case of an express decision when the law does not fix any other effective date to authorize the bringing of suit. Obviously, this is inapplicable to a decision which does not require receipt to be effective.

There is no inequity in this result. Since contractors persuaded Congress that administrative inaction should be treated as an adverse decision subject to appeal or suit like any other adverse decision, a contractor must be as vigilant in pursuing such claims as in the case of any other adverse decision. Because the deadline for a decision is set only after the contractor initiates the process by filing its claim, contractors are not placed at an unfair disadvantage. Having chosen to start the procedure, the contractor is (or should be) aware that the lack of administrative action obligates it to pursue any further remedy it desires in a timely manner.

### V. Timeliness of the Claim

■ Plaintiff contends that its suit is still timely, even under the 12-month period, because the contracting officer promised his decision would be rendered "mid-84" and plaintiff's suit, filed March 11, 1985, was within 12 months of the contracting officer's failure to render his decision at that time. This argument is without merit.

First, plaintiff's allegation that it was told by the contracting officer that he would issue a decision in mid-84 is unsubstantiated. The affidavit of plaintiff's president is of no assistance. Although he states plaintiff was told a decision was forthcoming, he does not support the mid-1984 allegation. The only evidence presented, a January 1985 letter from plaintiff's attorney to the contracting officer stating it is *his* "understanding" that a decision would not be received until mid-84, is inadmissible hearsay for the purpose of imputing to the contracting officer the notification to the contractor required by

§ 605(c)(2)(B) for extending the statutory deadline for the officer's decision.

Second, even if accepted as true, such statement by the contracting officer would be inadequate notification under § 605(c)(2)(B), which requires that the contracting officer "notify the contractor of the time within which a decision will be issued." Without that notification, the statute sets a deadline for the decision: 60 days after the contracting officer receives the claim.

The original House and Senate bills provided that any extension beyond 60 days be by written mutual agreement of the parties. *See* S.Rep. 1118, *supra* at 21; H.R. Rep. 1556, *supra* at 18. When Congress adopted the amendment that substituted the current language of § 605(c)(2) it explained (124 Cong.Rec. 36267 (1978)):

> Section 5(c) in the reported S. 3178 (section 6(c) in the Act as passed by the Senate) has been amended due to the concerns expressed by the Department of Defense, Senator Proxmire, and Admiral Rickover that the provisions of section 5(c), with regard to setting a time limit of 60 days after written request for a decision, were too limiting, especially for large, complex claims. The intent to this provision was to safeguard the interests of the contractor from possible unreasonable delays by contracting officers. This amendment would satisfy both concerns. The ultimate decision as to the appropriate time limit if there is a conflict by the contractor and the contracting officer will be made by the agency board after a petition by the contractor. *This will safeguard the contracting officer from an arbitrary and unreasonable request from a contractor on a large complex claim and would also afford the contractor relief from possible delaying tactics of a contracting officer.* [Emphasis added.]

The logical inference is that, to protect the contractor from "possible delaying tactics," the language of § 605(c)(2)(B) requires that the contracting officer provide the contractor with a date certain, not an amorphous time frame, for issuing a decision. The record contains nothing that may be construed as this kind of notification, and the oral and indefinite statements alleged by plaintiff do not satisfy § 605(c)(2)(B).

Plaintiff claims it relied on defendant's representations that a decision would be forthcoming and waited to file suit. But the statute is mandatory, and plaintiff cannot by its "reliance" extend the statutory period of limitations.

Aware of its remedies, plaintiff chose to initiate the CDA process when it filed its certified claim with the contracting officer. In the face of inaction, to avoid the deemed denial from being "final and conclusive", plaintiff was obligated to move ahead by timely suit or appeal, or to protect itself by petitioning the contract appeals board to set a date for decision. Plaintiff never petitioned the board, and it did not initiate suit for well over 12 months after its claim was "deemed" denied. Accordingly, plaintiff's suit in this court is untimely under § 609(a) of the Contract Disputes Act.

Defendant's motion to dismiss is GRANTED. The Clerk is directed to dismiss the complaint.

## ORDER ON PLAINTIFF'S MOTION FOR RECONSIDERATION AND REQUEST FOR ORAL ARGUMENT AND MOTION TO SUPPLEMENT THE RECORD

Plaintiff has moved for reconsideration of this court's decision, *Pathman Construction Co. v. United States*, 10 Cl.Ct. 142 (Cl.Ct.1986), dismissing plaintiff's complaint as untimely. Substantially all of the arguments raised in this motion having already been carefully considered by this court in the prior opinion and rejected, the motion is DENIED.

Plaintiff also moves to supplement the record with affidavits to confirm that the contracting officer told Pathman that his decision on the claim would be rendered in mid-1984. In order to complete the

record, plaintiff's motion is ALLOWED. However, the circumstances of these affidavits do not alter the court's finding that such oral and indefinite notice was inadequate to extend the statutory deadline for bringing suit. Title 41 U.S.C. § 605(c)(2)(B) provides:

> A contracting officer shall, within 60 days of receipt of a submitted certified claim over $50,000—
>
> (A) issue a decision; or
>
> (B) notify the contractor of the time within which a decision will be issued.

Section 605(c)(5) then provides that any failure by the contracting officer to issue a decision within the period required will authorize the commencement of the appeal or suit on the claim. It is evident that the notification by the contracting officer of the extended time he requires for the decision must be sufficiently definite so as to trigger the provisions of § 605(c)(5), which authorizes the commencement of an appeal or suit if a decision is not issued by the extended due date. A mere statement that a decision will be issued by mid-1984 obviously is inadequate for this purpose. Furthermore, for the notice of the extended time when a decision will be issued to have any such effect, it must be given within the original 60 days of receipt of the certified claim. Here the certified claim was submitted on May 6, 1983. Plaintiff's supplemental affidavits show that the earliest communication from the contracting officer regarding the issuance of a decision in 1984 was in a telephone conversation on August 5, 1983, 3 months after submission of the certified claim. Thus, the notification upon which plaintiff relies could not be effective to extend the statutory deadline, regardless of its form.

In its motion to supplement the record, plaintiff correctly notes that, on page 13 of its opinion, the court misstated the date of the letter from plaintiff's attorney to the contracting officer. The correct date was February 1984, not January 1985. While the opinion will be corrected to reflect the proper date, the change requires no conclu-

sion different from that reached by the court with regard to that letter.

The Clerk is directed to insert "February 1984" in lieu of "January 1985" on line 20 of page 13 of the court's opinion of May 30, 1986.

Plaintiff's request for oral argument "pursuant to Appendix H of the Rules of the United States Claim Court" is also DENIED. Appendix H provides for oral argument on all contested motions "as to which one of the parties requests to be heard *by so stating in its initial brief.*" (Emphasis added.) The instant request comes too late. Furthermore, the court is of the view that the issues have been thoroughly reviewed and no useful purpose would be served by such argument at this time.